**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:14-cv-24010-FAM**

CHRISTOPHER L. PARKER, BRIAN
TEWES, MARC AVERETTE, SCOTT
BARRISH, CHARLES BECKER, ERIK
BARTENHAGEN, ANDRE BOOKER,
INGRID ALEJANDRA BURGO HOYOS,
DONNA CHECK, JAMES CONDON,
CESAR COURI, DONALD CREPEAU,
WILLIAM DEAN, SANDRA DELONIS,
VICTOR DEVILA, JOHN DEVANY,
PETER DIAMOND, ADAM EHRLICH,
BART GANCHER, NATASHA GIBSON,
HAROLD       GOLDBERG,       LORI
GOSEWICH, ADLAI GREEN, RONDA
HAMILTON, STEVEN HOLTZ, JORGE
ISA, VINCENZINA JACKSON, METRIA
JONES, HENRY KESNER, THOMAS
KORNELL, ANGEL LUIS LAZO-PEREZ,
MARC LEONARDO, JUSTINA LOPEZ,
SELENA MEAD, ANNIE MIGDAL,
RAUL MILLIAN, JAMES MIRABELLI,
WILLIAM MOORE, EVAN MORETTI,
MARWA MOUSSA, LEIGH NOLAN,
PHILIP LEVINE, EVELYN PARK,
JEFFREY PASSMAN, RAMCHAND
PERSAUD, TARYN PISANESCHI, JESUS
POLI, RICHARD POWERS, SHARON
PRUETT, JOSEPH RAMOS, ANGELA
RODRIGUEZ,       NELSON       ROSA,
KIMBERLY ANN RUBIN, PATRICK
RUSSELL,       XIOMARA       SANTOS,
MICHAEL       SHANE,       DONNA
SCHNEIDER, BRYAN SILBER, CAROLE
SILVERMAN, IVAN SIMSON, MARIA
SUAREZ, KATHRYN VICCHIULLO-
SEUFERT, RON TAYLOR, JAMES
WALKER,       MICHAEL       WOODBY,
JEREMY WOODRUM, and EDUARDO
ZEITUNE, individually and on behalf of
others similarly-situated,

Plaintiffs,

CLASS ACTION

v.

AMERICAN TRAFFIC SOLUTIONS, INC., AMERICAN TRAFFIC SOLUTIONS, LLC and AMERICAN TRAFFIC SOLUTIONS CONSOLIDATED LLC, XEROX STATE & LOCAL SOLUTIONS, INC., f/k/a ACS STATE & LOCAL SOLUTIONS, GATSO USA INC., MARSHALL STRANBURG, individually and as Executive Director of the FLORIDA DEPARTMENT OF REVENUE, FLORIDA DEPARTMENT OF REVENUE, CITY OF APOPKA, CITY OF AVENTURA, VILLAGE OF BAL HARBOUR, CITY OF BOCA RATON, CITY OF BOYNTON BEACH, CITY OF BRANDON, CITY OF BROOKSVILLE, BROWARD COUNTY, TOWN OF CAMPBELLTON, CLAY COUNTY, CITY OF CLERMONT, CITY OF CLEWISTON, CITY OF COCOA BEACH, CITY OF CORAL GABLES, CITY OF CORAL SPRINGS, TOWN OF CUTLER BAY, TOWN OF DAVIE, CITY OF DAYTONA BEACH, CITY OF DORAL, VILLAGE OF EL PORTAL, CITY OF FLORIDA CITY, CITY OF FORT LAUDERDALE, CITY OF GAINESVILLE, CITY OF GREEN COVE SPRINGS, CITY OF GROVELAND, CITY OF GULFPORT, CITY OF HAINES CITY, CITY OF HALLANDALE BEACH, CITY OF HIALEAH, CITY OF HIALEAH GARDENS, HILLSBOROUGH COUNTY, CITY OF HOLLYWOOD, CITY OF HOLLY HILL, CITY OF HOMESTEAD, TOWN OF JUNO BEACH, CITY OF KENNETH CITY, TOWN OF KEY BISCAYNE, CITY OF LAKELAND, CITY OF LAUDERDALE LAKES, CITY OF MAITLAND, MANATEE COUNTY, CITY OF MARGATE, TOWN OF MEDLEY, CITY OF MIAMI, CITY OF MIAMI BEACH, MIAMI-DADE COUNTY, CITY OF MIAMI GARDENS, CITY OF MIAMI SPRINGS, CITY OF MILTON, CITY OF NEW PORT RICHEY, CITY OF NORTH

2

BAY VILLAGE, CITY OF NORTH MIAMI,
CITY OF NORTH MIAMI BEACH, CITY
OF OCOEE, CITY OF OLDSMAR, CITY
OF OPA-LOCKA, ORANGE COUNTY,
TOWN OF ORANGE PARK, CITY OF
ORLANDO, OSCEOLA COUNTY, CITY
OF PALATKA, PALM BEACH COUNTY,
CITY OF PALM BAY, CITY OF PALM
COAST, CITY OF PEMBROKE PINES
CITY OF PALM SPRINGS, VILLAGE OF
PALM SPRINGS, POLK COUNTY, CITY
OF PORT RICHEY, CITY OF SARASOTA,
CITY OF SOUTH PASADENA, CITY OF
ST. PETERSBURG, CITY OF SUNRISE,
TOWN OF SURFSIDE, CITY OF
SWEETWATER, CITY OF
TALLAHASSEE, CITY OF TAMARAC,
CITY OF TAMPA, CITY OF TEMPLE
TERRACE, CITY OF WEST MIAMI, CITY
OF WEST PALM BEACH, CITY OF WEST
PARK and CITY OF WINTER PARK.

                  Defendants.

## MASTER CONSOLIDATED AMENDED COMPLAINT AND JURY DEMAND

The above-captioned Plaintiffs, individually and on behalf of others similarly situated, bring this class action against the above-captioned Defendants, for unlawfully issuing and collecting fines for red-light traffic violations that were and are void under Florida law. For ease of reference throughout this Master Amended Complaint, the three AMERICAN TRAFFIC SOLUTIONS Defendants shall be referred to collectively as "ATS," XEROX STATE & LOCAL SOLUTIONS, INC., f/k/a ACS STATE & LOCAL SOLUTIONS, INC., shall be referred to as "XEROX," GATSO USA INC. shall be referred to as "GATSO," and ATS, XEROX, and GATSO shall be referenced collectively as the "Vendor Defendants" or "Vendor(s)." The above-captioned counties and municipalities shall be referred to collectively as the "Local Government Defendants."

## NATURE OF THE ACTION

1.      This action is brought on behalf of several classes of persons who were charged with a red-light traffic violation (the "Plaintiff Classes," as more fully defined below) purportedly issued pursuant to the authority of The Mark Wandall Traffic Safety Program, § 316.0083, Fla. Stat. (the "Wandall Act"), whereby the Local Government Defendants employed red-light cameras to enforce violations of sections 316.074(1) and 316.075(1)(c) of the Florida Statutes, which require drivers to obey red-light traffic signals.

2.      The Local Government Defendants contracted with, and delegated all authority to, the Vendor Defendants to operate the red-light cameras, including, but not limited to, determining whether a violation has occurred and issuing the resulting ticket.

3.      The Vendor Defendants are private, for-profit merchants that design, sell, install, maintain, operate, supervise, administer and monitor red-light camera systems, including the issuance and enforcement of notices and citations, for local governments throughout the United States.  They provide these services to as many as 100 Florida municipalities and counties.

4.      At all times material, the highly comprehensive services these Vendors have provided to Florida counties and municipalities have extracted almost complete control from them in the monitoring and enforcement of red-light violations.  The Vendors' employees – and not local law enforcement officers – control almost the entire law enforcement process.

5.      Pursuant to their arrangements with the respective Local Government Defendant, the Vendors determine which cases evidence a possible red-light violation meriting review by the applicable law enforcement official.  Only the Vendors' employees have access to all images taken by a red-light camera, and only they review all such images.  The Vendors then transmit select images of alleged infractions, known as "pre-processed infraction data" or "infraction

4

data," to a Traffic Infraction Enforcement Officer ("TIEO") of the contracting local government. The TIEO then either accepts or rejects the infraction data by clicking an accept or reject button on a computer screen.  If the Vendor unilaterally determines that a particular case does not meet the evidentiary standards sufficient to merit a red-light violation, that case is not processed any further, and the corresponding images are not submitted to the local authority.

6.      In short, and as explained in more detail below, the Vendor Defendants unlawfully conduct and control almost the entire issuance and enforcement process for red-light camera violations and make determinations which, under Florida law, are only to be performed by a TIEO.

7.      "In Florida, only law enforcement officers and traffic enforcement officers have the legal authority to issue citations for traffic infractions, which means only law enforcement officers and traffic enforcement officers are entitled to determine who gets prosecuted for a red-light violation."  *City of Hollywood v. Arem*, No. 4D12-1312, 2014 WL 5149159, *4 (Fla. 4th DCA Oct. 15, 2014) (citing Fla. Stat. §§ 316.0083(3), 316.640 (2011)), *reh'g en banc denied* (Jan. 30, 2015).

8.      Although Florida law authorizes counties and municipalities to delegate *initial review* of potential violations captured by a red-light camera, it does *not* authorize them to delegate the determination of who violates the law or the issuance of Notices of Violation ("NOVs") and Uniform Traffic Citations ("UTCs").  Nor does Florida law allow counties or municipalities to delegate to private vendors the filing of a copy of the UTC with the clerk of court to invoke the jurisdiction of the applicable court.

9.      In contravention of Florida law, the Local Government Defendants have improperly outsourced to the Vendor Defendants their legislatively granted authority to issue

5

traffic citations and unlawfully delegated to the Vendor Defendants the authority to determine whether a traffic violation has occurred.

10.     As set forth in greater detail below, the foregoing actions by the Local Government Defendants' constitute improper delegations of their police powers, and the Vendor Defendants' issuance of NOVs and UTCs violated Plaintiffs' rights under Florida law as well as their rights to due process of law under the U.S. Constitution.

## PARTIES

### Plaintiffs

11.     Each of the representative Plaintiffs, listed in Table I below, is a citizen and resident of Florida, over the age of eighteen, otherwise *sui juris*, and received an NOV and/or UTC issued by ATS from a red-light camera in the county or municipality listed below:

Table I

| | | |
|---|---|---|
| a. | Donna Check | Apopka |
| b. | Adam Ehrlich, William Dean | Aventura, Florida City |
| c. | William Moore | Aventura |
| d. | Kimberly Ann Rubin, Steven Holtz, Jesus Poli | Boca Raton |
| e. | Richard Powers, Michael Shane | Boynton Beach |
| f. | Andre Booker | Brandon |
| g. | Victor Devila | Brooksville |
| h. | Nelson Rosa | Cocoa Beach |
| i. | Ron Taylor | Cocoa Beach |
| j. | Sharon Pruett | Coral Gables |
| k. | Scott Barrish | Clermont |
| l. | Marwa Moussa | Cutler Bay |
| m. | Christopher Parker, Erik Bartenhagen | Davie |
| n. | Angel Luis Lazo-Perez | Florida City |
| o. | John E. Devany | Fort Lauderdale |
| p. | Thomas Kornell | Groveland |
| q. | Metria Jones | Gulfport |

| r. | Ramchand Persaud | Haines City |
|---|---|---|
| s. | Marc Leonardo | Hallandale Beach |
| t. | Justina Lopez | Hillsborough County |
| u. | Donald P. Crepeau | Hollywood |
| v. | Lori Gosewich | Lakeland |
| w. | Selena Mead, Evan Moretti | Margate |
| x. | Xiomara Santos | Miami |
| y. | Annie Migdal | Miami |
| z. | Ingrid Alejandra Burgo Hoyos | Miami |
| aa. | Patrick Russell | Miami |
| bb. | Marc Averette | Miami |
| cc. | Peter Diamond | Miami-Dade County, North Miami |
| dd. | Raul Millian | Miami-Dade County |
| ee. | Cesar Couri | Miami-Dade County |
| ff. | Harold Goldberg | Miami-Dade County |
| gg. | James Mirabelli | Miami Gardens |
| hh. | James Condon | New Port Richey |
| ii. | Bryan Silber | North Miami |
| jj. | Kathryn Vicchiullo-Seufert | Ocoee |
| kk. | Jeremy Woodrum | Opa Locka |
| ll. | Donna Schneider | Orlando |
| mm. | Vincenzina Jackson | Orange County |
| nn. | Michael Woodby | Palatka |
| oo. | Carole J. Silverman | Palm Beach County |
| pp. | Adlai Green | Palm Coast |
| qq. | Henry Kesner | City of Palm Spgs. |
| rr. | Jeffrey Passman | Village of Palm Spgs. |
| ss. | Jesus Poli | Pembroke Pines |
| tt. | Joseph Ramos | St. Petersburg |
| uu. | Angela Rodriguez, Jesus Poli | Sunrise |
| vv. | Evelyn Park | Surfside |
| ww. | Jorge Isa | Sweetwater |
| xx. | Natasha Gibson | Tamarac |
| yy. | Joseph Ramos | Tampa |
| zz. | James Walker | Temple Terrace |
| aaa. | Taryn Pisaneschi, Bart Gancher | West Palm Beach |

12.     Each of the representative Plaintiffs, listed in Table II below, is a citizen and resident of Florida, over the age of eighteen, otherwise *sui juris*, and received an NOV and/or UTC issued by XEROX from a red-light camera in the county or municipality listed below:

Table II

| | | |
|---|---|---|
| a. | Ronda Hamilton | Coral Springs |
| b. | Charles Becker | Manatee County |
| c. | Brian Tewes | Miami Beach |
| d. | Maria Suarez | Miami Beach |
| e. | Bryan Silber | Miami Beach |
| f. | Eduardo Zeitune | Miami Beach |
| g. | Jeffery Passman | Tallahassee |

13.     Each of the representative Plaintiffs, listed in Table III below, is a citizen and resident of Florida, over the age of eighteen, otherwise *sui juris*, and received an NOV and/or UTC issued by GATSO from a red-light camera in the county or municipality listed below:

Table III

| | | |
|---|---|---|
| a. | Ivan Simson | Daytona Beach, Holly Hill |
| b. | Leigh Nolan | Holly Hill |
| c. | Philip Levine | Maitland |
| d. | Sandra Delonis | Maitland |

## **Defendants**

14.     Defendant American Traffic Solutions, Inc. is a Kansas corporation with its primary place of business located at 7681 East Gray Road, Scottsdale, Arizona and therefore is a citizen of Kansas and Arizona.  It is one of the two largest traffic camera vendors/operators in the United States and conducts significant business in Florida, including the operations of numerous red light cameras in Florida.  American Traffic Solutions, Inc. engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida

and committed the unlawful acts alleged herein in the state of Florida.  On its website, American Traffic Solutions, Inc. openly acknowledges its affiliation with the state of Florida and in fact uses the affiliation as a marketing tool.

15.     Defendant American Traffic Solutions, LLC is a Delaware limited liability company with its primary place of business located at 7681 East Gray Road, Scottsdale, Arizona and therefore is a citizen of Delaware and Arizona.

16.     Defendant American Traffic Solutions Consolidated LLC is a Delaware limited liability company with its primary place of business located at 7681 East Gray Road, Scottsdale, Arizona and therefore is a citizen of Delaware and Arizona.

17.     On information and belief, all the foregoing ATS entities are jointly financially controlled by one another and are the alter ego of each other.  Therefore, each is jointly and severally liable for all damages due to Plaintiffs and all Class members.

18.     At all times relevant herein, ATS was acting as a contractor to and agent for various Florida counties and municipalities, acting under color of state law by, among other things, performing red-light camera installation and maintenance among other public, governmental, and/or municipal functions, including but not limited to issuing NOVs and UTCs to Class members.  Defendant ATS was therefore acting under color of state law for the purposes of 42 U.S.C. § 1983.

19.     Additional counties and municipalities, including but not limited to the following, contracted with ATS for red-light camera services and similarly delegated their police powers unlawfully to ATS (collectively, along with the City of Miami, the "ATS Local Government Defendants"):

| | | | | | | |
|---|---|---|---|---|---|---|
| (a) | Apopka | (y) | Hialeah | (ww) | Orange Park |
| (b) | Aventura | (z) | Hialeah Gardens | (xx) | Orlando |
| (c) | Bal Harbour | (aa) | Hillsborough County | (yy) | Osceola County |
| (d) | Boca Raton | (bb) | Hollywood | (zz) | Palatka |
| (e) | Boynton Beach | (cc) | Homestead | (aaa) | Palm Beach County |
| (f) | Brandon | (dd) | Juno Beach | (bbb) | Palm Coast |
| (g) | Brooksville | (ee) | Kenneth City | (ccc) | Palm Springs (city) |
| (h) | Broward County | (ff) | Key Biscayne | (ddd) | Palm Springs (Vil.) |
| (i) | Campbellton | (gg) | Lakeland | (eee) | Pembroke Pines |
| (j) | Clermont | (hh) | Lauderdale Lakes | (fff) | Port Richey |
| (k) | Clewiston | (ii) | Margate | (ggg) | Sarasota |
| (l) | Cocoa Beach | (jj) | Medley | (hhh) | South Pasadena |
| (m) | Coral Gables | (kk) | Miami Dade County | (iii) | St. Petersburg |
| (n) | Cutler Bay | (ll) | Miami Gardens | (jjj) | Sunrise |
| (o) | Davie | (mm) | Miami Springs | (kkk) | Surfside |
| (p) | Doral | (nn) | Milton | (lll) | Sweetwater |
| (q) | El Portal | (oo) | New Port Richey | (mmm) | Tamarac |
| (r) | Florida City | (pp) | North Bay Village | (nnn) | Tampa |
| (s) | Fort Lauderdale | (qq) | North Miami | (ooo) | Temple Terrace |
| (t) | Green Cove Springs | (rr) | North Miami Beach | (ppp) | West Miami |
| (u) | Groveland | (ss) | Ocoee | (qqq) | West Palm Beach |
| (v) | Gulfport | (tt) | Oldsmar | (rrr) | West Park |
| (w) | Haines City | (uu) | Opa-Locka | | |
| (x) | Hallandale Beach | (vv) | Orange County | | |

20.     Defendant Xerox State & Local Solutions, Inc. is a New York corporation with its principal place of business located at 8260 Willow Oaks Corporate Drive, 6th Floor, Fairfax,

Virginia and therefore is a citizen of New York and Virginia.  It is one of the largest traffic camera vendors/operators in the United States and conducts significant business in Florida, including the installation and operation of numerous red-light cameras in Florida.  XEROX engages in substantial, continuous, systematic, and non-isolated business activity within the State of Florida.  It is subject to personal jurisdiction in the State of Florida because it regularly conducts business in the State of Florida and committed the unlawful acts alleged herein in the State of Florida.

21.     At all relevant times, XEROX has acted as a contractor to and/or agent for various Florida counties and municipalities by, among other things, performing red-light camera installation and maintenance, as well as other governmental functions, including but not limited to issuing NOVs and UTCs to Plaintiffs and Class members.

22.     The counties or municipalities that contracted with XEROX for red-light camera services and that unlawfully delegated their police powers to XEROX (collectively the "XEROX Local Government Defendants") include:

> (a)     Bradenton
>
> (b)     Coral Springs
>
> (c)     Miami Beach
>
> (d)     Manatee County
>
> (e)     Tallahassee

23.     Defendant Gatso USA Inc. is a Delaware corporation with its principal place of business located at 900 Cummings Center, Suite 321-U, Beverly, Massachusetts 01915 and is therefore a citizen of Delaware and Massachusetts.  It is a leading traffic camera vendor/operator in the United States and conducts significant business in Florida, including the installation and

11

operation of numerous red-light cameras in Florida.  GATSO engages in substantial, continuous, systematic, and non-isolated business activity within the State of Florida.  It is subject to personal jurisdiction in the State of Florida because it regularly conducts business in the State of Florida and committed the unlawful acts alleged herein in the State of Florida.

24.     At all relevant times, GATSO has acted as a contractor to and/or agent for various Florida counties and municipalities by, among other things, performing red-light camera installation and maintenance, as well as other governmental functions, including but not limited to issuing NOVs and UTCs to Plaintiffs and Class members.

25.     The counties or municipalities that contracted with GATSO for red-light camera services that unlawfully delegated their police powers to GATSO (collectively the "GATSO Local Government Defendants"), include:

       (a)     Daytona Beach

       (b)     Gainesville

       (c)     Holly Hill

       (d)     Palm Bay

       (e)     Maitland

       (f)     Winter Park

26.     Defendant City of Miami contracted with ATS to perform virtually all of the red-light-camera traffic-enforcement functions that Florida law authorizes only the City to perform.  Specifically, ATS, and not a TIEO or other duly authorized officer, determines whether a violation has occurred, and ATS issues the citations.

27.     Defendant Marshall Stanburg is a resident of Leon County, a citizen of Florida, and the Executive Director of the Florida Department of Revenue.  Plaintiffs sue Stranburg for

injunctive and declaratory relief individually and in his official capacity as the official responsible for executing the statutory duties and internal policies of the Department of Revenue, for acts and practices taken under color of state law that have subjected Plaintiffs and Class members to deprivations of their right to due process under the Fourteenth Amendment to the United States Constitution.

28.     Defendant Department of Revenue is created by Florida Statutes.  Its official headquarters are in Leon County, Florida and it is therefore a citizen of Florida.

**JURISDICTION AND VENUE**

29.     This is a class action for damages that exceed $5,000,000.00, exclusive of interest and costs.

30.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332(d), and 28 U.S.C. § 1343.

31.     Venue is proper within this District because a substantial part or all of the events giving rise to the claims occurred and continue to occur in this District, given that: (1) ATS has operated and continues to operate red-light cameras in various counties and municipalities in within this District, including Aventura, Bal Harbour, Boca Raton, Coral Gables, Cutler Bay, Doral, Fort Lauderdale, Hialeah Gardens, Hollywood, Homestead, Key Biscayne, Miami, North Miami Beach, North Miami, Palm Beach County and West Palm Beach; (2) XEROX has operated and continues to operate red-light cameras in various counties and municipalities in Florida, including but not limited to the City of Miami Beach, and (3) the State of Florida and Department of Revenue conduct business in this District, and earned revenue from the red light issued in this District.

**GENERAL ALLEGATIONS**

**A.  The Wandall Act Governs Vendors' Business in Florida.**

32.     In 2010, the Florida legislature enacted the Mark Wandall Traffic Safety Act (the "Wandall Act"), which authorized the use of red-light traffic-infraction detectors by local governments and the Florida Department of Highway Safety and Motor Vehicles.  The Wandall Act went into effect on July 1, 2010.  This Amended Complaint addresses only violations issued after July 1, 2010.  *See* Fla. Stat. § 316.0083.

33.     The Wandall Act authorizes local governments to use cameras to capture red light violations and enforce such violations.  A county or municipality may authorize a TIEO to enforce the violations and issue them through electronic means.

34.     Pursuant to the Act:

[a] notice of violation and a traffic citation may not be issued for failure to stop at a red light if the driver is making a right-hand turn in a careful and prudent manner at an intersection where right-hand turns are permissible. A notice of violation and a traffic citation may not be issued under this section if the driver of the vehicle came to a complete stop after crossing the stop line and before turning right if permissible at a red light, but failed to stop before crossing over the stop line or other point at which a stop is required. This paragraph does not prohibit a review of information from a traffic infraction detector by an authorized employee or agent of the department, a county, or a municipality *before issuance of the traffic citation by the traffic infraction enforcement officer*.

Fla. Stat. § 316.0083(1)(a) (emphasis added).

35.     Florida's statutes do not authorize the delegation of the authority to issue citations to anyone other than a Florida law enforcement officer such as a TIEO. To satisfy this standard, the officer authorized to determine who is prosecuted for a red-light violation must (a) be employed by the sheriff or police department, (b) "successfully complete[] instruction in traffic enforcement procedures and court presentation through the Selective Traffic Enforcement Program as approved by the Division of Criminal Justice Standards and Training of the

14

Department of Law Enforcement, or through a similar program," and (c) "be physically located in the county of the respective sheriff's or police department."  Fla. Stat. § 316.640(5)(a).

36.     The Wandall Act grants TIEOs the power to enforce red-light violations under sections 316.074(1) and 316.075(1)(c)1 of the Florida Statutes.   The Wandall Act further authorizes TIEOs to "review . . . information from a traffic infraction detector" before "the traffic infraction enforcement officer" issues a citation for violations.  Fla. Stat. § 316.0083(1)(a).

37.     When a UTC is issued under the Wandall Act, "the *traffic infraction enforcement officer shall provide* by electronic transmission a replica of the traffic citation data to the court having jurisdiction over the alleged offense or its traffic violations bureau within 5 days after the date of issuance of the traffic citation to the violator."  Fla. Stat. § 316.650(3)(c) (emphasis added).

### B.  Red-light Traffic Camera Systems and the Vendor Defendants' Red-light Traffic Enforcement Programs.

38.     Red-light traffic camera systems integrate cameras and sensors that continuously monitor traffic at certain pre-selected intersections.  A red-light camera connects to a sensor that monitors traffic flow at a crosswalk or stop line and is connected to another sensor that detects when the traffic light changes color.  At a specified time after the traffic light has turned red, the camera automatically photographs any vehicle traveling at a pre-set minimum speed.  A digital video camera or cameras are also used to record the entire alleged infraction.

39.     The Vendor Defendants offer privatized, "turnkey" traffic law enforcement solutions designed to detect and enforce red-light traffic infractions.   They provide an all-encompassing range of services to local governments for detection and enforcement of traffic infractions, including but not limited to: (1) marketing and training to help gain public support for their products; (2) aiding local governments in pitching the idea to constituents and

lawmakers; (3) traffic studies (performed by the Vendors) to select appropriate intersections for the installation of their products; (4) the maintenance, repair and installation of their products; (5) training for local government employees, including law enforcement officials; (6) their respective virtual, privates network in encrypted format, utilized by law enforcement officials to review potential infractions and by courts to receive evidentiary support for challenged cases; (7) expert witnesses to support the prosecution of drivers accused of traffic infractions (and training for TIEOs to provide evidentiary testimony); (8) legal advice and support to assist local governments with implementing and defending the program; (9) the design, printing, mailing and processing of NOVs and UTCs; (10) the collection of fees and fines from drivers accused of traffic infractions; (11) forwarding UTCs electronically to the traffic courts, purportedly invoking the courts' jurisdiction; and (12) a nationwide toll-free number and website listed on all NOVs and through which an accused violator is informed of payment options and means by which to contest it.

40.     The Vendor Defendants' programs are so comprehensive that a local government need only obtain necessary construction permits, a TIEO capable of reviewing hundreds of images of potential violations per day, and a hearing process to prosecute alleged violators who challenge the issued NOVs or UTCs.  The Vendor Defendants' programs provide and perform all services necessary to running a traffic-infraction program which services, by law, are within the non-delegable police powers of the Local Government Defendants.

41.     The pre-processed infraction data the Vendors initially review to determine whether it constitutes a violation is sent to Florida TIEOs in the form of three photos and a very brief video of the alleged infraction.  The first photo shows the vehicle before the stop bar with the red light, the second shows the vehicle beyond the stop bar with the red light and the third is

a close-up of the vehicle license plate.  There is no photo or video identifying the driver of the vehicle.  If processed, the owner of the vehicle at the address linked to the license plate will receive the violation, regardless of who was driving the vehicle.

42.     With respect to drivers of rented vehicles, the issuance of the NOV in the foregoing manner can create a substantial delay, resulting in the renter receiving the NOV much closer to or even after its due date.  NOVs of $158.00 quickly become UTCs of $277.00 in this manner.

43.     TIEOs have limited access to the Vendor Defendants' virtual, private network for purposes of reviewing "pre-processed Infraction Data."  On information and belief, once such data are transmitted, the TIEO has access to the images of the potential violation for only a limited period of time.

44.     In exchange for its products and services, the Vendors charge monthly maintenance and service fees.  If the Vendors participate in the collection of past due fees, they may collect an impermissible fee of as much as 30% of the NOV or UTC.

45.     For each red light violation charged under the Mark Wandall Traffic Safety Program, the driver alleged to have committed the violation is required to pay a fine of $158.00, and the respective city or municipality that issued the violation is required to remit from such amount $113.00 to Defendant Florida Department of Revenue, and distribute the balance of $45.00 to the respective city or municipality itself.  *See* Fla. Stat. § 316.0083(3)(a)-(b).

### D.  Red-light Traffic Enforcement Programs Violate Florida Law.

46.     Under Florida law, "*only* law enforcement officers and traffic enforcement officers have the legal authority to issue citations for traffic infractions, which means only law

enforcement officers and traffic enforcement officers are entitled to determine who gets prosecuted for a red-light violation." *Arem*, 2014 WL 5149159, at *4 (emphasis added).

47.     The Local Government Defendants, however, have improperly delegated these police powers to the Vendor Defendants who, through their red-light traffic enforcement programs, assume the duty to monitor and enforce red-light traffic infractions for the municipalities and counties with which they contract.

48.     The Vendor reviews recorded images and video from red-light cameras and determines, in its sole discretion, whether the recorded images should be forwarded to a TIEO for review of the Vendor's determination as to whether a violation has occurred.  When the Vendor determines that no violation has occurred, no information regarding the violation is ever transmitted to the TIEO or the contracting local government.

49.     When a TIEO authorizes enforcement of the potential violation, the Vendor automatically populates an electronic NOV form, which includes a computer-generated copy of the TIEO's signature and badge number, prints out the NOV form, and causes it to be sent via first-class mail to the registered owner of the vehicle that the camera photographed.

50.     Once the registered owner of the vehicle receives the NOV, the owner may either pay the $158.00 fine or challenge the violation.  If the registered owner of the vehicle fails to either pay the fine or challenge the violation before the due date, ATS and XEROX automatically generate a UTC with the badge number and signature of the original reviewing TIEO, mail the UTC to the registered vehicle owner, and automatically generate a replica, which ATS and XEROX automatically send to the appropriate clerk of court.

51.     GATSO provides the TIEO with another opportunity to review the alleged violation, but GATSO itself still issues all UTCs and automatically transmits Infraction Data to the appropriate clerk of court.

52.     As to ATS and XEROX, the only involvement by a TIEO during this entire process is his or her initial review of the photographic images ATS and XEROX forwarded and either authorizing or rejecting the violation.  After authorizing, the TIEO never sees the citation bearing his or her digital signature and badge number.  The TIEO merely acquiesces in ATS's and XEROX's decisions to issue an NOV.  And if the registered owner does not pay the fine (or elect an option to try to avoid the fine) before expiration of the specified due date, ATS and XEROX– and not the TIEO – issue a UTC without any further involvement by the TIEO.

53.     The Vendor's issuance of a UTC is significant because, unlike an NOV, issuance of a UTC impacts the alleged violator's permanent driving record, unless the UTC is successfully challenged and dismissed.

54.     The Vendor Defendants are private, for-profit vendors, which are not authorized to issue citations.  Their employees are not employed by the local sheriff or police department, are not certified under Florida law and, on information and belief, their employees are physically located outside of Florida.  The NOVs and UTCs issued by the Vendor Defendants are thus ineffective and unenforceable as a matter of law.

55.     The Wandall Act only authorizes state departments, counties and municipalities to assess and collect fines from NOVs and UTCs, Fla. Stat. §§ 316.0083(1)(b)2-3, and forbids the receipt of a commission from any revenue collected from red-light camera violations, § 316.0083(1)(b)4.

56.     Under the Vendor Defendants' red-light programs, if the accused pays the associated fine, his or her payment is collected and processed by the Vendors, for which they receive an additional fee.

57.     If a driver fails to pay the UTC fine by the due date, the violation goes to collections and the fine increases substantially.  If the Vendors or their agents serve as the debt collector, they receive an additional fee.

58.     The Vendor Defendants lack authority to assess and collect fines, as these powers cannot be delegated by the Local Government Defendants to a private, non-governmental entity.  Thus, any fees charged by them in connection with collecting or processing payments have been obtained illegally.

59.     Further, pursuant to Fla. Stat. § 316.650(3) and Florida Rule of Traffic Court 6.040(b), the UTC sent to the clerk is the initiating document that invokes the subject-matter jurisdiction of the traffic court and, pursuant to Fla. Stat. § 315.650(3)(c), only the TIEO may submit the UTC to the court electronically and invoke the traffic court's jurisdiction.

60.     There is no statutory authority allowing the private vendors to forward electronically the UTCs to the clerk as the Vendor Defendants have done.  As a result, at all times material, traffic courts never had jurisdiction over UTCs forwarded by the Vendors.

61.     Notably, Local Government Defendants compensate Vendor Defendants in a manner that creates an incentive for Vendor Defendants to maximize the number of potential infractions detected, in violation of Fla. Stat. § 316.0083(1)(b)4.

62.     In addition, in the case of local governments that contract with XEROX, if the TIEO does not authorize a violation deemed by XEROX to be otherwise valid, including controversial right-turn on red violations, XEROX can charge the municipality $75 for each such

20

unauthorized violation.   This process all but eliminates TIEO discretion and incentivizes increased authorization of dubious violations.

63.      The Vendors purport to operate under the specific authority granted by the Florida legislature under the Wandall Act.  Yet, more than four years after the Act became effective, the Vendors continue to operate in direct violation of certain provisions in the Act and to the detriment of Plaintiffs and others similarly situated.

### E.  Plaintiffs' Experiences with ATS.

64.      Table IV below lists a sample of Plaintiffs' vehicles that were photographed for an alleged red-light camera violation by an ATS camera in or near the listed location.  As the registered owner of the vehicle photographed, each listed Plaintiff received an NOV and/or UTC from ATS threatening the fine amount(s) listed.

65.      Each NOV bore the name and badge number of an officer, and included an affirmative representation that "[t]he traffic enforcement officer named above has reviewed the recorded images evidencing the red-light signal infraction, has identified the tag number of the violating vehicle and has found reasonable and probable grounds that a violation has been committed."

66.      Each UTC bore the name and badge number of an officer.

67.      Each listed Plaintiff, in the sample below, paid the fine in the amount listed in the "Amount Paid" column, plus, if so included in the Table, a $4.95 convenience fee assessed by and paid directly to ATS.

Table IV

| | Plaintiff | Red-Light Camera Location | NOV or UTC | Fine Amount | Amount Paid |
|---|---|---|---|---|---|
| a. | Adam Ehrlich | Aventura | UTC | $158 | $277 |
| | | Florida City | NOV | $158 | $158 |
| b. | Kimberly Ann Rubin | Boca Raton | NOV | $158 | $158 |
| c. | Marwa Moussa | Cutler Bay | NOV | $158 | $158 |
| d. | Christopher L. Parker | Town of Davie | NOV | $158 | $162.95 |
| e. | John E. Devany | Ft. Lauderdale | NOV | $158 | $190 |
| f. | Donald P. Crepeau | Hollywood | NOV | $158 | $263 |
| g. | Selena Mead | Margate | NOV | Pending in court | Pending in court |
| h. | Xiomara Santos | Miami | UTC | $277 | |
| i. | Annie Migdal | Miami | NOV | $158 | $158 |
| j. | Ingrid Alejandra Burgo Hoyos | Miami | UTC | $158 | $277 |
| k. | Bryan Silber | North Miami | UTC | $277 | |
| l. | Peter A. Diamond | North Miami | UTC | $277 | |
| m. | Raul M. Millian | Miami-Dade County | NOV | $158 | |
| n. | Cesar Couri | Miami-Dade County | NOV | $158 | |
| o. | Harold Goldberg | Miami-Dade County | NOV | $158 | $162 |
| p. | James Mirabelli | Miami Gardens | UTC | $158 | $277 |
| q. | Carole J. Silverman | Palm Beach County | NOV | $158 | $131 |
| r. | Taryn S. Pisaneschi | West Palm Beach | NOV | $158 | |
| s. | William Moore | Aventura | NOV | $158 | $162 |

## F.  Plaintiffs' Experiences with XEROX

68.    Table V below lists a sample of Plaintiffs' vehicles that were photographed for an alleged red-light camera violation by a XEROX camera in or near the listed location.  As the registered owner of the vehicle photographed, each listed Plaintiff received an NOV and/or UTC from XEROX threatening the fine amount(s) listed.

69.    The NOV bore the name and badge number of an officer, and included an affirmative representation that "[t]he traffic enforcement officer named above has reviewed the recorded images evidencing the red-light signal infraction, has identified the tag number of the

violating vehicle and has found reasonable and probable grounds that a violation has been committed."

71.    On information and belief, each UTC bore the name and badge number of an officer.

71.    Each listed Plaintiff, in the sample below, paid the fine in the amount listed in the "Amount Paid" column, plus, if so included in the Table, a $4.95 convenience fee assessed by and paid directly to ATS.

Table V

|     | Plaintiff | Red-Light Camera Location | NOV or UTC | Fine Amount | Amount Paid |
| --- | --- | --- | --- | --- | --- |
| a. | Brian Tewes | Miami Beach | NOV | $158 | $162.95 |
| b. | Maria Suarez | Miami Beach | NOV | $158 | |
| c. | Byan Silber | Miami Beach | NOV | $158 | |

**G.  Plaintiffs' Experiences with GATSO**

72.    Table VI below lists a sample of Plaintiffs' vehicles that were photographed for an alleged red-light camera violation by a GATSO camera in or near the listed location.  As the registered owner of the vehicle photographed, each listed Plaintiff received an NOV and/or UTC from GATSO threatening the fine amount(s) listed.

73.    The NOV bore the name and badge number of an officer, and included an affirmative representation that "[t]he traffic enforcement officer named above has reviewed the recorded images evidencing the red-light signal infraction, has identified the tag number of the violating vehicle and has found reasonable and probable grounds that a violation has been committed."

74.     On information and belief, each UTC bore the name and badge number of an officer.

75.     Each listed Plaintiff, in the sample below, paid the fine in the amount listed in the "Amount Paid" column, plus, if so included in the Table, a $4.95 convenience fee assessed by and paid directly to ATS.

Table VI

|     | Plaintiff | Red-Light Camera Location | NOV or UTC | Fine Amount | Amount Paid |
|-----|-----------|---------------------------|------------|-------------|-------------|
| a.  | Leigh Nolan | Holly Hill | NOV | $158 | $158 |

**H. Plaintiffs and All Class Members Have Been Issued Invalid and Unenforceable Tickets.**

76.     The NOVs issued by the Vendors to Plaintiffs and the Classes bear an attestation and affirmance, under color of law, that a TIEO has reviewed the recorded images and identified the license plate number of the allegedly violating vehicle and therefore has found reasonable and probable grounds that an offense has been committed, resulting in the violation charged. UTCs bear similar attestations and affirmances, giving them the imprimatur of being from the municipality or county from which they purport to be issued.  In fact, both NOVs and UTCs are initially reviewed and ultimately issued by the Vendor Defendants.

77.     Plaintiffs and the Classes received NOVs and/or UTCs and could not reasonably have known that the tickets were issued in a manner inconsistent with statutory requirements. Because of the foregoing unlawful conduct, the tickets were not enforceable, and Plaintiffs and the Classes were wrongfully induced to pay unlawfully imposed fines.

24

## CLASS ACTION ALLEGATIONS

### Plaintiffs' Classes

78.     Under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure,

Plaintiffs bring this action on behalf of themselves and two Classes initially defined as follows:

> "The ATS Class":  All individuals and entities who received an NOV and/or UTC based upon an image or video taken from a red-light camera operated in Florida by ATS from July 1, 2010, through the date of class certification and who either paid the statutory fine and any additional fees in connection therewith or still owe the fine.

> "The XEROX Class":  All individuals and entities who received an NOV and/or UTC based upon an image or video taken from a red-light camera operated in Florida by XEROX from July 1, 2010, through the date of class certification and who either paid the statutory fine and any additional fees in connection therewith or still owe the fine.

> "The GATSO Class":  All individuals and entities who received an NOV and/or UTC based upon an image or video taken from a red-light camera operated in Florida by GATSO from July 1, 2010, through the date of class certification and who either paid the statutory fine and any additional fees in connection therewith or still owe the fine.

79.     Excluded from the Classes are XEROX, ATS, GATSO, and their employees,

officers, directors, legal representatives, successors and wholly or partly owned subsidiaries or

affiliated companies; class counsel and their employees; TIEOs and other law enforcement

personnel employed or contracted by the Local Government Defendants who participated in the

red-light camera programs; and the judicial officers and their immediate family members and

associated court staff assigned to this case.

### Ascertainability

80.     The Classes can be readily identified using ticket payment records, issuance

records, and other information kept by the Vendor Defendants, public records maintained by the

Local Government Defendants and/or the Florida Commissioner of Revenue, or third parties in the usual course of business and within their control.

### Numerosity

81.     As there were in excess of approximately 1.1 million red-light traffic NOVs and UTCs issued in Florida between 2010 and 2013, the number of Class members is great enough that joinder is impracticable.

### Typicality

82.     Plaintiffs' claims are typical of the claims of the Class, as Plaintiff and Class members alike were issued unauthorized NOVs and were harmed in the same way by the applicable Vendor Defendant's uniform misconduct.  More specifically, the claims of Plaintiffs who paid unlawful fines to ATS and the local governments with whom ATS contracts are common to the ATS Class members' claims, the claims of Plaintiffs who paid unlawful fines to XEROX and the local governments with whom XEROX contracts are common to the XEROX Class members' claims; and the claims of Plaintiffs who paid unlawful fines to GATSO and the local governments with whom GATSO contracts are common to the GATSO Class members' claims.

### Adequacy of Representation

83.     Plaintiffs will fairly and adequately protect the Classes' interests and have retained counsel competent and experienced in class-action litigation.  Plaintiffs' interests are coincident with, and not antagonistic to, absent Class members' interests because by proving their individual claims they will necessarily prove the liability of all Defendants to the Plaintiff Classes. Plaintiffs are also cognizant of, and determined to, faithfully discharge their fiduciary duties to the absent Class members as the Class representatives.

84.     Plaintiffs' counsel have substantial experience in prosecuting class actions. Plaintiffs and counsel are committed to vigorously prosecuting this action, have the financial resources to do so, and do not have any interests adverse to the Classes.

**Commonality and Predominance**

85.     There are numerous questions of law and fact the answers to which are common to each Class and predominate over questions affecting only individual members, including the following:

a)      whether the Local Government Defendants improperly delegated their police powers by contractually outsourcing their statutory obligations to the Vendor Defendants;

b)      whether the Vendor Defendants determine which cases TIEOs review;

c)      whether the Vendor Defendants review of video and photographs of alleged violation and determine which ones to forward to the respective members of the Defendant Class;

d)      whether the Vendor Defendants determine who is subject to prosecution for a traffic infraction;

e)      whether the Vendor Defendants create the traffic citations;

f)      whether the Vendor Defendants issue the traffic citations to the vehicle owner;

g)      whether the Vendor Defendants transmit the traffic citation information to the respective court;

h)      whether each Vendor Defendant violated Florida law by selecting which alleged violations are forwarded to the Local Government Defendants; designing, printing and/or issuing NOVs and/or UTCs; and/or transmitting the UTC to the respective courts;

i)      whether each Vendor Defendant's practice of issuing NOVs and/or UTCs is "unfair," "deceptive" or "unconscionable" under the Florida Deceptive and Unfair Trade Practices Act;

j)      whether each Vendor Defendant's red-light camera traffic-

27

enforcement programs deprived Plaintiffs and Class members of property without due process;

k)    whether Plaintiffs and Class members are entitled to an order enjoining each Vendor Defendant from continuing to operate their red-light camera programs;

l)    whether Plaintiffs and Class members are entitled to disgorgement or restitution of the fines and other fees wrongfully and unlawfully collected or otherwise obtained by each Vendor Defendant in connection with its red-light camera program;

m)   whether each Vendor Defendant's conduct injured Plaintiffs and Class members and, if so, the extent of the damages; and

n)    whether it is unfair for the Florida Department of Revenue to retain monies paid to it through the unlawful implementation of the Florida re-light camera traffic enforcement program.

### Superiority and Manageability

86.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the individual Class members is impracticable.  Likewise, because the damages suffered by each individual Class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually, and the burden imposed on the judicial system would be enormous.

87.    The prosecution of separate actions by the individual Class members would also create a risk of inconsistent or varying adjudications for individual Class members, which could also establish incompatible standards of conduct for the Vendor Defendants and Local Government Defendants.  The conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

28

**Defendant Class**

88.     In addition to the Plaintiff Classes, this case also seeks certification of a

Defendant Class, defined as follows:

> All counties and municipalities in the State of Florida that
> permitted, authorized, or acquiesced in ATS' issuance of NOVs or
> UTCs based on an image or video taken from a red-light camera
> administered or operated by ATS at any time from July 1, 2010
> through the date of class certification.

**Numerosity**

89.     The proposed Defendant Class is so numerous that joinder of all members would

be impracticable. Numerous local governmental entities in Florida contracted with ATS to

administer their red light camera programs – including, but not limited to the 69 local

governmental entities listed in Paragraph 19 above – and delegated authority to administer red-

light camera programs to ATS in violation of state law as described in this complaint, such that

the number of individual Local Government Defendants who contracted with ATS would make

their joinder impracticable.

**Adequacy and Typicality**

90.     The City of Miami is an adequate and typical class representative for the

Defendant Class because, like the other municipalities and counties, it participated in the red-

light camera program that was an improper and illegal delegation of power in direct

contravention of Florida state and federal law and U.S. constitutional protections.  It will fairly

and adequately represent and protect the interests of the members of the Defendant Class because

it bears a substantial financial interest in the outcome of this litigation and its interests are

coincident with, and not antagonistic to, the other Defendant Class members' interests.

Additionally, the City of Miami has substantial financial resources and access to competent counsel.

## Commonality and Predominance

91.     The claims against the Defendant Class members involve questions of law and fact common to the Defendant Class members that predominate over any potential questions affecting only individual members of the Defendant Class, including among other things:

a)      whether the ATS red-light camera program uses a ticket processing/issuing system that gave ATS discretion to issue NOVs and UTCs under the color of law;

b)      whether the ATS red-light camera program violates constitutional protections under the U.S. Constitution (i.e., the right to procedural due process);

c)      the extent to which revenue is shared, and on what basis, between ATS and the Defendant Class members;

d)      the extent to which a TIEO participates in the process of identifying a violation, sending out a notice, and collecting any fines;

e)      the extent to which a TIEO participates in related enforcement and/or collection activities with respect to unpaid violations;

f)      the extent to which the Defendant Class members have ceded their authority and police power to ATS; and

g)      whether the Defendant Class members' conduct injured the Plaintiff Class members and, if so, the extent of the damages.

92.     The Defendant Class shares a juridical link in that all members of the Defendant Class participated in the red-light camera program that was a delegation of power in direct contravention of Florida state and federal law and U.S. constitutional protections.

93.      Certification of the Defendant Class is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because the Defendant Class has acted with respect to the ATS

(Plaintiffs') Class in a manner generally applicable to each ATS Class member.  Specifically, ATS operates its red-light camera systems in a materially identical manner in each county or municipality within the Defendant Class.

94.    Certification of the Defendant Class is also appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) because there is a well-defined community of interest in the questions of law and fact involved in the action, which affect all members of the Defendant Class, and questions of law or fact common to the respective members of the Defendant Class predominate over any potential questions of law or fact affecting only individual members of the Defendant Class.

### Superiority and Manageability

95.    This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims including consistency of adjudications. Absent a class action, the counties and municipalities comprising the Defendant Class would likely incur significantly greater expenses in separately defending themselves in this action, or in numerous individual actions, than they would incur in their defense of a Defendants' class action.

96.    A class action involving both a Plaintiff Class and a Defendant Class is an appropriate method for the adjudication of the controversy in that it will permit a large number of claims against a large number of defendants to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution and/or redundant defense of numerous individual actions and the duplication of discovery, effort, expense, and the burden on the courts that individual actions would create.

97.     A Defendant Class, whether as to liability as a whole or as to certain common issues, provides a superior method to adjudicate this matter by permitting the collaborative defense of claims involving common legal issues, outweighing any difficulties that might be argued with regard to the management of the class action.

## COUNTS

98.     For ease of reference, the claims that follow are summarized in the table below:

| Count | Asserted By | Asserted Against | Claim |
|---|---|---|---|
| I | Plaintiffs in Table I & ATS Class | ATS | FDUTPA |
| II | Plaintiffs in Table II & XEROX Class | XEROX | FDUTPA |
| III | Plaintiffs in Table III & GATSO Class | GATSO | FDUTPA |
| IV | Plaintiffs in Table I & ATS Class | ATS | Unjust Enrichment |
| V | Plaintiffs in Table II & XEROX Class | XEROX | Unjust Enrichment |
| VI | Plaintiffs in Table III & GATSO Class | GATSO | Unjust Enrichment |
| VII | Plaintiffs in Table I & ATS Class | ATS Local Government Defendants & the Defendant Class | Unjust Enrichment |
| VIII | Plaintiffs in Table II & XEROX Class | XEROX Local Government Defendants | Unjust Enrichment |
| IX | Plaintiffs in Table III & GATSO Class | GATSO Local Government Defendants | Unjust Enrichment |
| X | All Plaintiffs & Plaintiff Classes | Executive Director of the Florida Department of Revenue & the Florida Department of Revenue | Unjust Enrichment |
| XI | Plaintiffs in Table I & ATS Class | ATS | § 1983 (Due Process) |
| XII | Plaintiffs in Table II & XEROX Class | XEROX | § 1983 (Due Process) |
| XIII | Plaintiffs in Table III & GATSO Class | GATSO | § 1983 (Due Process) |

| XIV | Plaintiffs in Table I & ATS Class | ATS Local Government Defendants & the Defendant Class | § 1983 (Due Process) |
|---|---|---|---|
| XV | Plaintiffs in Table II & XEROX Class | XEROX Local Government Defendants | § 1983 (Due Process) |
| XVI | Plaintiffs in Table III & GATSO Class | GATSO Local Government Defendants | § 1983 (Due Process) |
| XVII | All Plaintiffs & Plaintiff Classes | Local Government Defendants & the Defendant Class | Delegation of Police Powers in Violation of Florida Law |
| XVIII | All Plaintiffs & Plaintiff Classes | Local Government Defendants & the Defendant Class | Violation of Florida Law - Preemption |
| XIX | All Plaintiffs & Plaintiff Classes | Local Government Defendants & the Defendant Class | Due Process Under Florida Constitution |
| XX | All Plaintiffs & Plaintiff Classes | All Defendants | Declaratory Judgment and Injunctive Relief |

## COUNT I
### *vs. ATS*

**Violation of Florida Deceptive and Unfair Trade Practices Act**

99.     The Plaintiffs listed in Table I, who received NOVs and/or UTCs from ATS, and the ATS Class incorporate by reference paragraphs 1 through 97 as if fully set forth herein, and further allege:

100.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits persons from engaging in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.204(1).

101.    ATS' operation of their red-light camera programs, as described above, constitutes an "unfair," "deceptive," and/or "unconscionable" act or practice in violation of Fla. Stat. § 501.204.

102.    Specifically, ATS' red-light camera program is "unfair," "deceptive," and/or "unconscionable" in one or more of the following ways:

a)      ATS unlawfully issues NOVs and UTCs that only appear to have been issued by a government actor and that conceal ATS' role in their issuance;

b)      ATS unlawfully issues NOVs and UTCs which it lacks legal authority to issue;

c)      ATS threatens people, including the Plaintiffs who received NOVs and/or UTCs from ATS as well as the ATS Class, with monetary fines using unlawfully issued NOVs and/or UTCs, in violation of Fla. Stat. § 316.0083;

d)      ATS does not reveal that the TIEO does not conduct a preliminary review of all images captured by red-light cameras before an NOV is issued, or re-review an alleged violation before a UTC is issued;

e)      ATS does not reveal that neither the NOV nor the UTC has been reviewed by a TIEO or other law enforcement officer;

f)      ATS sends a copy of the UTC and other necessary information to the applicable court, thereby unlawfully initiating a judicial proceeding, when Florida law only allows such transmission to be made by a TIEO (Fla. Stat. § 316.650(c));

g)      As part of its unlawful profit-seeking activity, ATS also directly collects some of these fines as well as additional fees incident to the payment of the fines; and

h)      The manner in which ATS is compensated by its local government clients creates an incentive for ATS to maximize the number of potential infractions detected, in violation of Fla. Stat. § 316.0083(1)(b)4.

103.    The above-referenced statements and/or omissions would be material to a reasonable person, and would likely affect his or her choice with respect to paying fines or contesting them.

104.    Based on the foregoing, ATS's actions caused or are likely to cause substantial injury to persons that they cannot reasonably avoid themselves and that is not outweighed by

countervailing benefits to persons or competition; or ATS's actions offend established public policy and are unethical, oppressive, unscrupulous or substantially injurious to persons. As a result, ATS has engaged in unfair acts or practices in violation of FDUTPA.

105.    As a result of ATS' unfair, deceptive and/or unconscionable practices, these Plaintiffs and all ATS Class members have been aggrieved and have suffered, or will suffer, actual damages resulting from their payment of the fines in the NOVs and/or UTCs, as well as any fees they incurred as a direct result of paying those fines.

106.    In addition to their actual monetary damages, these Plaintiffs and the ATS Class are also entitled, pursuant to Fla. Stat. § 501.211(1), to the following non-monetary relief:

    a)    a permanent injunction to prevent ATS from continuing to engage in these unlawful practices, including ceasing all efforts to assist in the collection of unpaid fines; and

    b)    a declaratory judgment that ATS' above-mentioned conduct violates the FDTUPA.

107.    These Plaintiffs and the ATS Class members are entitled to actual damages and all other relief allowable under FDUTPA, including the recovery of costs and reasonable attorneys' fees in pursuing these claims.

## COUNT II
### *vs. XEROX*

**Violation of Florida Deceptive and Unfair Trade Practices Act**

108.    The Plaintiffs listed in Table II, who received NOVs and/or UTCs from XEROX, and the XEROX Class incorporate by reference paragraphs 1 through 97 as if fully set forth herein, and further allege:

109.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits persons from engaging in "[u]nfair methods of competition, unconscionable acts or practices,

and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

110.    XEROX's operation of its red-light camera programs, as described above, constitutes an "unfair," "deceptive," and/or "unconscionable" act or practice in violation of Fla. Stat. § 501.204.

111.    Specifically, XEROX's red-light camera program is "unfair," "deceptive," and/or "unconscionable" in one or more of the following ways:

a)      XEROX unlawfully issues NOVs and UTCs that only appear to have been issued by a government actor and conceal XEROX's role in their issuance;

b)      XEROX unlawfully issues NOVs and UTCs which it lacks legal authority to issue;

c)      XEROX threatens people, including these Plaintiffs and the XEROX Class, with monetary fines using unlawfully issued NOVs and/or UTCs, in violation of Fla. Stat. § 316.0083;

d)      XEROX does not reveal that that the TIEO does not conduct a preliminary review of all images captured by red-light cameras before an NOV is issued, or re-review an alleged violation before a UTC is issued;

e)      XEROX does not reveal that neither the NOV nor the UTC has been reviewed by a TIEO or other law enforcement officer;

f)      XEROX sends a copy of the UTC and other necessary information to the applicable court, thereby unlawfully initiating a judicial proceeding, when Florida law only allows such transmission to be made by a TIEO (Fla. Stat. § 316.650(c));

g)      As part of its unlawful profit-seeking activity, XEROX also directly collects some of these fines as well as additional fees incident to the payment of the fines; and

h)      The manner in which XEROX is compensated by its local government clients creates an incentive for XEROX to maximize the number of potential infractions detected, in violation of Fla. Stat. § 316.0083(1)(b)4.

36

112.    The above-referenced statements and/or omissions would be material to a reasonable person, and would likely affect his or her choice with respect to paying fines or contesting them.

113.    Based on the foregoing, XEROX's actions caused or are likely to cause substantial injury to persons that they cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to persons or competition; or XEROX's actions offend established public policy and are unethical, oppressive, unscrupulous or substantially injurious to persons.  As a result, XEROX has engaged in unfair acts or practices in violation of FDUTPA.

114.    As a result of XEROX's unfair, deceptive and/or unconscionable practices, these Plaintiffs and all XEROX Class members have been aggrieved and have suffered, or will suffer, actual damages resulting from their payment of the fines in the NOVs and/or UTCs, as well as any fees they incurred as a direct result of paying those fines.

115.    In addition to their actual monetary damages, these Plaintiffs and the XEROX Class are also entitled, pursuant to Fla. Stat. § 501.211(1), to the following non-monetary relief:

    a)    a permanent injunction to prevent XEROX from continuing to engage in these unlawful practices, including ceasing all efforts to assist in the collection of unpaid fines; and

    b)    a declaratory judgment that XEROX's above-mentioned conduct violates the FDTUPA.

116.    These Plaintiffs and the XEROX Class members are entitled to actual damages and all other relief allowable under FDUTPA, including the recovery of costs and reasonable attorneys' fees in pursuing these claims.

## COUNT III
### *vs. GATSO*

### Violation of Florida Deceptive and Unfair Trade Practices Act

117.    The Plaintiffs listed in Table III, who received NOVs and/or UTCs from GATSO, and the GATSO Class incorporate by reference paragraphs 1 through 97 as if fully set forth herein, and further allege:

118.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits persons from engaging in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.204(1).

119.    GATSO's operation of their red-light camera programs, as described above, constitutes an "unfair," "deceptive," and/or "unconscionable" act or practice in violation of Fla. Stat. § 501.204.

120.    Specifically, GATSO's red-light camera program is "unfair," "deceptive," and/or "unconscionable" in one or more of the following ways:

    a)    GATSO unlawfully issues NOVs and UTCs that only appear to have been issued by a government actor and that conceal GATSOS' role in       their issuance;

    b)    GATSO unlawfully issues NOVs and UTCs which it lacks legal authority to issue;

    c)    GATSO threatens people, including the Plaintiffs who received NOVs and/or UTCs from GATSO as well as the GATSO Class, with monetary fines using unlawfully issued NOVs and/or UTCs, in violation of Fla. Stat. § 316.0083;

    d)    GATSO does not reveal that the TIEO does not conduct a preliminary review of all images captured by red-light cameras before an NOV is issued, or re-review all images before a UTC is issued;

38

f)      GATSO sends a copy of the UTC and other necessary information to the applicable court, thereby unlawfully initiating a judicial proceeding, when Florida law only allows such transmission to be made by a TIEO (Fla. Stat. § 316.650(c));

g)      As part of its unlawful profit-seeking activity, GATSO also directly collects some of these fines as well as additional fees incident to the payment of the fines; and

h)      The manner in which GATSO is compensated by its local government clients creates an incentive for GATSO to maximize the number of potential infractions detected, in violation of Fla. Stat. § 316.0083(1)(b)4.

121.    The above-referenced statements and/or omissions would be material to a reasonable person, and would likely affect his or her choice with respect to paying fines or contesting them.

122.    Based on the foregoing, GATSO's actions caused or are likely to cause substantial injury to persons that they cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to persons or competition; or GATSO's actions offend established public policy and are unethical, oppressive, unscrupulous or substantially injurious to persons. As a result, GATSO has engaged in unfair acts or practices in violation of FDUTPA.

123.    As a result of GATSO's unfair, deceptive and/or unconscionable practices, these Plaintiffs and all GATSO Class members have been aggrieved and have suffered, or will suffer, actual damages resulting from their payment of the fines in the NOVs and/or UTCs, as well as any fees they incurred as a direct result of paying those fines.

124.    In addition to their actual monetary damages, these Plaintiffs and the GATSO Class are also entitled, pursuant to Fla. Stat. § 501.211(1), to the following non-monetary relief:

a)      a permanent injunction to prevent GATSO from continuing to engage in these unlawful practices, including ceasing all efforts to assist in the collection of unpaid fines; and

b)      a declaratory judgment that GATSO's above-mentioned conduct violates the FDTUPA.

125.    These Plaintiffs and the GATSO Class members are entitled to actual damages and all other relief allowable under FDUTPA, including the recovery of costs and reasonable attorneys' fees in pursuing these claims.

**COUNT IV**
*vs. ATS*

**Unjust Enrichment**

126.    The Plaintiffs listed in Table I, who received NOVs and/or UTCs from ATS, and the ATS Class incorporate by reference paragraphs 1 through 97 as if fully set forth herein, and further allege:

127.    ATS issued NOVs and/or UTCs to these Plaintiffs and the ATS Class in a manner that violates the express requirements of Florida Statutes, § 316.0083, rendering them unlawful.

128.    These Plaintiffs and the ATS Class members who paid these fines conferred a benefit upon ATS, regardless of whether the fines were paid initially to ATS or to the municipality or county, because ATS profits from the revenue generated from its unlawful red-light camera program.

129.    ATS accepted and retained the benefit of this revenue, both in the form of its contractual fees with the county or municipality and additional fees generated by ATS' website designed to facilitate collection of the unlawful fines.

130.    In light of the foregoing, it would be inequitable for ATS to be permitted to retain the benefit of the revenue it has received from its unlawful red-light camera program.

131.    Accordingly, these Plaintiffs and the ATS Class members seek disgorgement and/or restitution of these unlawfully imposed fines from ATS.

**COUNT V**
*vs. XEROX*

**Unjust Enrichment**

132.    The Plaintiffs listed in Table II, who received NOVs and/or UTCs from XEROX, and the XEROX Class incorporate by reference paragraphs 1 through 97 as if fully set forth herein, and further allege:

133.    XEROX issued NOVs and/or UTCs to these Plaintiffs and the XEROX Class in a manner that violates the express requirements of Florida Statutes, § 316.0083, rendering them unlawful.

134.    These Plaintiffs and the XEROX Class members who paid these fines conferred a benefit upon XEROX, regardless of whether the fines were paid initially to XEROX or to the municipality or county, because XEROX profits from the revenue generated from its unlawful red-light camera program.

135.    XEROX accepted and retained the benefit of this revenue, both in the form of its contractual fees with the county or municipality and additional fees generated by XEROX's website designed to facilitate collection of the unlawful fines.

136.    In light of the foregoing, it would be inequitable for XEROX to be permitted to retain the benefit of the revenue it has received from its unlawful red-light camera program.

137.    Accordingly, these Plaintiffs and the XEROX Class members seek disgorgement and/or restitution of these unlawfully imposed fines from XEROX.

41

<u>**COUNT VI**</u>
*vs. GATSO*

**Unjust Enrichment**

138.     The Plaintiffs listed in Table III, who received NOVs and/or UTCs from GATSO, and the GATSO Class incorporate by reference paragraphs 1 through 97 as if fully set forth herein, and further allege:

139.     GATSO issued NOVs and/or UTCs to these Plaintiffs and the GATSO Class in a manner that violates the express requirements of Florida Statutes, § 316.0083, rendering them unlawful.

140.     These Plaintiffs and the GATSO Class members who paid these fines conferred a benefit upon GATSO, regardless of whether the fines were paid initially to GATSO or to the municipality or county, because GATSO profits from the revenue generated from its unlawful red-light camera program.

141.     GATSO accepted and retained the benefit of this revenue, both in the form of its contractual fees with the county or municipality and additional fees generated by GATSO's website designed to facilitate collection of the unlawful fines.

142.     In light of the foregoing, it would be inequitable for GATSO to be permitted to retain the benefit of the revenue it has received from its unlawful red-light camera program.

143.     Accordingly, these Plaintiffs and the GATSO Class members seek disgorgement and/or restitution of these unlawfully imposed fines from GATSO.

42

## COUNT VII

*vs.*

*The Defendant Class and the ATS Local Government Defendants*

### Unjust Enrichment

144.     The Plaintiffs listed in Table I, who received NOVs and/or UTCs from ATS, and the ATS Class incorporate by reference paragraphs 1 through 97 as if fully set forth herein, and further allege as to the ATS Local Government Defendant in whose jurisdiction the red-light camera at issue in their asserted violation was located, and as to the Defendant Class:

145.     The applicable ATS Local Government Defendant and the Defendant Class contracted with ATS, who issued NOVs and/or UTCs to the respective Plaintiffs and ATS Class for asserted red-light camera violations within the respective ATS Local Government Defendant's jurisdiction in a manner that violates the express requirements of Florida Statutes, § 316.0083, rendering the NOVs and/or UTCs unlawful.

146.     These Plaintiffs and the ATS Class members who paid these fines conferred a benefit upon the respective ATS Local Government Defendant or Defendant Class, regardless of whether the fines were paid initially to ATS or to the Local Government Defendant or Defendant Class.

147.     These ATS Local Government Defendants and Defendant Class accepted and retained the benefit of the revenue generated by these red-light camera fines.

148.     In light of the foregoing, it would be inequitable for these ATS Local Government Defendants and the Defendant Class to be permitted to retain the benefit of the revenue they have received from the unlawfully conducted red-light camera program.

149.     Accordingly, these Plaintiffs and the ATS Class members seek disgorgement and/or restitution of these unlawfully imposed fines from the respective ATS Local Government Defendants and Defendant Class.

**COUNT VIII**
*vs. XEROX Local Government Defendants*

**Unjust Enrichment**

150.     The Plaintiffs listed in Table II, who received NOVs and/or UTCs from XEROX, and the XEROX Class incorporate by reference paragraphs 1 through 97 as if fully set forth herein, and further allege as to the XEROX Local Government Defendant in whose jurisdiction the red-light camera at issue in their asserted violation was located:

151.     The applicable Local Government Defendant contracted with XEROX, who issued NOVs and/or UTCs to the respective Plaintiffs and XEROX Class for asserted red-light camera violations within the respective XEROX Local Government Defendant's jurisdiction in a manner that violates the express requirements of Florida Statutes, § 316.0083, rendering the NOVs and/or UTCs unlawful.

152.     These Plaintiffs and the XEROX Class members who paid these fines conferred a benefit upon the respective XEROX Local Government Defendant, regardless of whether the fines were paid initially to XEROX or to the XEROX Local Government Defendant.

153.     These XEROX Local Government Defendants accepted and retained the benefit of the revenue generated by these red-light camera fines.

154.     In light of the foregoing, it would be inequitable for these XEROX Local Government Defendants to be permitted to retain the benefit of the revenue they have received from the unlawfully conducted red-light camera program.

44

155.    Accordingly, these Plaintiffs and the XEROX Class members seek disgorgement and/or restitution of these unlawfully imposed fines from the respective XEROX Local Government Defendants.

**COUNT IX**
*vs. GATSO Local Government Defendants*

**Unjust Enrichment**

156.    The Plaintiffs listed in Table III, who received NOVs and/or UTCs from GATSO, and the GATSO Class incorporate by reference paragraphs 1 through 97 as if fully set forth herein, and further allege as to the GATSO Local Government Defendant in whose jurisdiction the red-light camera at issue in their asserted violation was located:

157.    The applicable Local Government Defendant contracted with GATSO, who issued NOVs and/or UTCs to the respective Plaintiffs and GATSO Class for asserted red-light camera violations within the respective GATSO Local Government Defendant's jurisdiction in a manner that violates the express requirements of Florida Statutes, § 316.0083, rendering the NOVs and/or UTCs unlawful.

158.    These Plaintiffs and the GATSO Class members who paid these fines conferred a benefit upon the respective GATSO Local Government Defendant, regardless of whether the fines were paid initially to GATSO or to the GATSO Local Government Defendant.

159.    These GATSO Local Government Defendants accepted and retained the benefit of the revenue generated by these red-light camera fines.

160.    In light of the foregoing, it would be inequitable for these GATSO Local Government Defendants to be permitted to retain the benefit of the revenue they have received from the unlawfully conducted red-light camera program.

45

161.    Accordingly, these Plaintiffs and the GATSO Class members seek disgorgement and/or restitution of these unlawfully imposed fines from the respective GATSO Local Government Defendants.

**COUNT X**
*vs. Executive Director of the Florida Department of Revenue &
the Florida Department of Revenue*

**Unjust Enrichment**

162.    All Plaintiffs and the Plaintiff Classes incorporate by reference paragraphs 1 through 97 as if fully set forth herein, and further allege as to the Florida Commissioner of Revenue:

163.    Pursuant to the Wandall Act, a portion of all revenue from fines generated by red-light camera operations in the State of Florida is earmarked for the Florida Department of Revenue.  Fla. Stat., § 316.0083(3)(a).

164.    The red-light camera systems operated by the Vendor Defendants with the permission, authorization, or acquiescence of the Local Government Defendants, resulted in the issuance of NOVs and/or UTCs to all Plaintiffs and the Plaintiff Classes in a manner that violates the express requirements of Florida Statutes, § 316.0083, rendering the NOVs and/or UTCs unlawful.

165.    All Plaintiffs and Plaintiff Class members who paid these fines conferred a benefit upon the Florida Department of Revenue, regardless of whether the fines were paid initially to a Vendor Defendant or a Local Government Defendant.

166.    The Department of Revenue, through the Commissioner, accepted and retained the benefit of the revenue generated by these red-light camera fines.

46

167.     In light of the foregoing, it would be inequitable for the Department of Revenue to be permitted to retain the benefit of the revenue it has received from the unlawfully conducted red-light camera program.

168.     Accordingly, Plaintiffs and the Plaintiff Class members seek disgorgement and/or restitution.

**COUNT XI**
*vs. ATS*

**Violation of U.S. Constitutional Right to Procedural Due Process**

169.     The Plaintiffs listed in Table I, who received NOVs and/or UTCs from ATS, and the ATS Class incorporate by reference paragraphs 1 through 97 as if fully set forth herein, and further allege:

170.     These Plaintiffs and the ATS Class bring this claim under 42 U.S.C. § 1983, against ATS, acting in an official capacity for the contracting counties and municipalities.

171.     These Plaintiffs and the ATS Class members have a property interest in not being threatened into paying unlawfully issued fines and cannot be compelled to pay such fines without being afforded adequate process.

172.     At all times material, ATS contracted with counties and municipalities throughout the State of Florida to perform public, governmental functions, including the review of red-light camera photographs and video to make initial determinations (or final rejections) of possible red-light traffic violations, the issuance of NOVs, the issuance of UTCs, and the transmission of UTCs to the applicable state court.

173.     When performing these functions, ATS did so purporting to use the governmental authority delegated to it by the counties and municipalities with which it contracts. The Wandall Act requires that local governments issue NOVs and UTCs. The NOVs and/or UTCs ATS issued

to Plaintiffs and members of the Class pose as official exercises of this police power reposed in the local governments.

174.    Consequently, ATS was acting under color of state law when it performed these functions.

175.    Through these actions, ATS denied these Plaintiffs and ATS Class members their rights to be free from the deprivation of property without procedural due process. Specifically, Florida law confers on drivers within the State of Florida the right not to be fined for a red-light camera traffic infraction unless a TIEO or other duly licensed law enforcement officer issues the NOV and the subsequent UTC.

176.    Further, ATS denied these Plaintiffs and ATS Class members their rights to procedural due process by transmitting UTCs to traffic courts when Florida law requires this be done by a TIEO, thus subjecting Plaintiffs and ATS Class members to proceedings over which the traffic courts did not properly have jurisdiction.

177.    ATS's usurpation of the statutorily non-delegable functions of issuing NOVs and UTCs has subjected the Plaintiffs in Table I and the ATS Class to a loss of property interests (the fines and associated fees paid) pursuant to a process that was void *ab initio*.

178.    Given the conduct above, ATS denied these Plaintiffs and ATS Class members' procedural due process rights, including, without limitation, issuing tickets and collecting fines pursuant to a process that was void *ab initio* (depriving them of their property) and also of the right to give testimony, pursue discovery, and admit relevant evidence at hearings regarding the legality of the delegation of authority to ATS and ATS's authority to issue NOVs and UTCs.

179.    As a direct and proximate result of ATS's violation of 42 U.S.C. § 1983, these Plaintiffs and ATS Class members have suffered injuries and damages.

48

## COUNT XII
*vs. XEROX*

### Violation of U.S. Constitutional Right to Procedural Due Process

180.    The Plaintiffs listed in Table II, who received NOVs and/or UTCs from XEROX, and the XEROX Class incorporate by reference paragraphs 1 through 97 as if fully set forth herein, and further allege:

181.    These Plaintiffs and the XEROX Class bring this claim under 42 U.S.C. § 1983, against XEROX, acting in an official capacity for the contracting counties and municipalities.

182.    These Plaintiffs and the XEROX Class members have a property interest in not being threatened into paying unlawfully issued fines and cannot be compelled to pay such fines without being afforded adequate process.

183.    At all times material, XEROX contracted with counties and municipalities throughout the State of Florida to perform public, governmental functions, including the review of red-light camera photographs and video to make initial determinations (or final rejections) of possible red-light traffic violations, the issuance of NOVs, the issuance of UTCs, and the transmission of UTCs to the applicable state court.

184.    When performing these functions, XEROX did so purporting to use the governmental authority delegated to it by the counties and municipalities with which it contracts. The Wandall Act requires that local governments issue NOVs and UTCs. The NOVs and/or UTCs XEROX issued to these Plaintiffs and members of the XEROX Class pose as official exercises of this police power reposed in the local governments.

185.    Consequently, XEROX was acting under color of state law when it performed these functions.

186.    Through these actions, XEROX denied these Plaintiffs and XEROX Class members their rights to be free from the deprivation of property without procedural due process. Specifically, Florida law confers on drivers within the State of Florida the right not to be fined for a red-light camera traffic infraction unless a TIEO or other duly licensed law enforcement officer issues the NOV and the subsequent UTC.

187.    Further, XEROX denied these Plaintiffs and XEROX Class members their rights to procedural due process by transmitting UTCs to traffic courts when Florida law requires this be done by a TIEO, thus subjecting Plaintiffs and XEROX Class members to proceedings over which the traffic courts did not properly have jurisdiction.

188.    XEROX's usurpation of the statutorily non-delegable functions of issuing NOVs and UTCs has subjected these Plaintiffs and the XEROX Class to a loss of property interests (the fines and associated fees) pursuant to a process that was void *ab initio*.

189.    Given the conduct above, XEROX denied these Plaintiffs and XEROX Class members' procedural due process rights, including, without limitation, issuing tickets and collecting fines pursuant to a process that was void *ab initio* (depriving them of their property) and also of the right to give testimony, pursue discovery, and admit relevant evidence at hearings regarding the legality of the delegation of authority to XEROX's and XEROX's authority to issue NOVs and UTCs.

190.    As a direct and proximate result of XEROX's violation of 42 U.S.C. § 1983, Plaintiffs have suffered injuries and damages.

## COUNT XIII
### *vs. GATSO*

**Violation of U.S. Constitutional Right to Procedural Due Process**

191.    The Plaintiffs listed in Table III, who received NOVs and/or UTCs from GATSO, and the GATSO Class incorporate by reference paragraphs 1 through 97 as if fully set forth herein, and further allege:

192.    These Plaintiffs and the GATSO Class bring this claim under 42 U.S.C. § 1983, against GATSO, acting in an official capacity for the contracting counties and municipalities.

193.    These Plaintiffs and the GATSO Class members have a property interest in not being threatened into paying unlawfully issued fines and cannot be compelled to pay such fines without being afforded adequate process.

194.    At all times material, GATSO contracted with counties and municipalities throughout the State of Florida to perform public, governmental functions, including the review of red-light camera photographs and video to make initial determinations (or final rejections) of possible red-light traffic violations, the issuance of NOVs, the issuance of UTCs, and the transmission of UTCs to the applicable state court.

195.    When performing these functions, GATSO did so purporting to use the governmental authority delegated to it by the counties and municipalities with which it contracts. The Wandall Act requires that local governments issue NOVs and UTCs. The NOVs and/or UTCs GATSO issued to these Plaintiffs and members of the GATSO Class pose as official exercises of this police power reposed in the local governments.

196.    Consequently, GATSO was acting under color of state law when it performed these functions.

197.    Through these actions, GATSO denied these Plaintiffs and GATSO Class members their rights to be free from the deprivation of property without procedural due process. Specifically, Florida law confers on drivers within the State of Florida the right not to be fined for a red-light camera traffic infraction unless a TIEO or other duly licensed law enforcement officer issues the NOV and the subsequent UTC.

198.    Further, GATSO denied these Plaintiffs and GATSO Class members their rights to procedural due process by transmitting UTCs to traffic courts when Florida law requires this be done by a TIEO, thus subjecting Plaintiffs and GATSO Class members to proceedings over which the traffic courts did not properly have jurisdiction.

199.    GATSO's usurpation of the statutorily non-delegable functions of issuing NOVs and UTCs has subjected these Plaintiffs and the GATSO Class to a loss of property interests (the fines and associated fees) pursuant to a process that was void *ab initio*.

200.    Given the conduct above, GATSO denied these Plaintiffs and GATSO Class members' procedural due process rights, including, without limitation, issuing tickets and collecting fines pursuant to a process that was void *ab initio* (depriving them of their property) and also of the right to give testimony, pursue discovery, and admit relevant evidence at hearings regarding the legality of the delegation of authority to GATSO and GATSO's authority to issue NOVs and UTCs.

201.    As a direct and proximate result of GATSO's violation of 42 U.S.C. § 1983, Plaintiffs have suffered injuries and damages.

## COUNT XIV

*vs.*

*Defendant Class and ATS Local Government Defendants*

**Violation of U.S. Constitutional Right to Procedural Due Process**

202.    The Plaintiffs listed in Table I, who received NOVs and/or UTCs from ATS, and the ATS Class incorporate by reference paragraphs 1 through 97 as if fully set forth herein, and further allege:

203.    These Plaintiffs and the ATS Class bring this claim under 42 U.S.C. § 1983, against the applicable ATS Local Government Defendants and the Defendant Class, acting under color of law.

204.    These Plaintiffs and the ATS Class members have a property interest in not being threatened into paying unlawfully issued fines and cannot be compelled to pay such fines without being afforded adequate process.

205.    At all times material, it was the policy, custom, and/or practice of these ATS Local Government Defendants and the Defendant Class to contract with ATS to outsource public, governmental functions, including the review of red-light camera photographs and video to make initial determinations (or final rejections) of possible red-light violations, the issuance of NOVs, the issuance of UTCs, and the transmission of UTCs to the applicable state court.

206.    By delegating these functions, these ATS Local Government Defendants and the Defendant Class acted in their official capacities and purported to cloak ATS in the authority they hold. The Wandall Act requires that local governments issue NOVs and UTCs. The authority these ATS Local Government Defendants and the Defendant Class delegated to ATS permitted ATS to issue NOVs and UTCs that, on their faces, appeared to be official exercises of the police power reposed in these ATS Local Government Defendants and the Defendant Class.

207.    Through these actions, these ATS Local Government Defendants and the Defendant Class denied these Plaintiffs and ATS Class members their rights to be free from the deprivation of property without procedural due process. Specifically, Florida law confers on drivers within the State of Florida the right not to be fined for a red-light camera traffic infraction unless a TIEO or other duly licensed law enforcement officer issues the NOV and the subsequent UTC.

208.    Further, the ATS Local Government Defendants and the Defendant Class denied these Plaintiffs and ATS Class members their rights to procedural due process by delegating the transmission of UTCs to traffic courts to the Vendor Defendants when Florida law requires this be done by a TIEO, thus subjecting Plaintiffs and ATS Class members to proceedings over which the traffic courts did not properly have jurisdiction.

209.    Consequently, these ATS Local Government Defendants and the Defendant Class were acting under color of state law when they improperly delegated these functions.

210.    Given the conduct above, these ATS Local Government Defendants and the Defendant Class denied these Plaintiffs and ATS Class members' procedural due process rights, including, without limitation, permitting tickets to be issued and collected pursuant to a process that was void *ab initio* (depriving them of their property) and also of the right to give testimony, pursue discovery, and admit relevant evidence at hearings regarding the legality of the delegation of authority to ATS and ATS's authority to issue NOVs and UTCs.

211.    As a direct and proximate result of these Local Government Defendants' and the Defendant Class' violations of 42 U.S.C. § 1983, these Plaintiffs and the ATS Class have suffered injuries and damages.

## COUNT XV
*vs.*
*XEROX Local Government Defendants*

**Violation of U.S. Constitutional Right to Procedural Due Process**

212.    Plaintiffs in Table II, who received NOVs and/or UTCs from XEROX, and the XEROX Class incorporate by reference paragraphs 1 through 97 as if fully set forth herein, and further allege:

213.    These Plaintiffs and the XEROX Class bring this claim under 42 U.S.C. § 1983, against the applicable XEROX Local Government Defendants, acting under color of law.

214.    These Plaintiffs and the XEROX Class members have a property interest in not being threatened into paying unlawfully issued fines and cannot be compelled to pay such fines without being afforded adequate process.

215.    At all times material, it was the policy, custom, and/or practice of these XEROX Local Government Defendants to contract with XEROX to outsource public, governmental functions, including the review of red-light camera photographs and video to make initial determinations (or final rejections) of possible red-light violations, the issuance of NOVs, the issuance of UTCs, and the transmission of UTCs to the applicable state court.

216.    By delegating these functions, these XEROX Local Government Defendants acted in their official capacities and purported to cloak XEROX in the authority they hold. The Wandall Act requires that local governments issue NOVs and UTCs. The authority these XEROX Local Government Defendants delegated to XEROX permitted it to issue NOVs and UTCs that, on their faces, appeared to be official exercises of the police power reposed in these Local Government Defendants.

217.    Through these actions, these XEROX Local Government Defendants denied these Plaintiffs and XEROX Class members their rights to be free from the deprivation of property without procedural due process. Specifically, Florida law confers on drivers within the State of Florida the right not to be fined for a red-light camera traffic infraction unless a TIEO or other duly licensed law enforcement officer issues the NOV and the subsequent UTC.

218.    Further, the XEROX Local Government Defendants denied these Plaintiffs and XEROX Class members their rights to procedural due process by delegating the transmission of UTCs to traffic courts to the Vendor Defendants when Florida law requires this be done by a TIEO, thus subjecting Plaintiffs and XEROX Class members to proceedings over which the traffic courts did not properly have jurisdiction.

219.    Consequently, these XEROX Local Government Defendants were acting under color of state law when they improperly delegated these functions.

220.    Given the conduct above, these XEROX Local Government Defendants' denied these Plaintiffs and XEROX Class members' procedural due process rights, including, without limitation, permitting tickets to be issued and collected pursuant to a process that was void *ab initio* (depriving Class members of their property) and also of the right to give testimony, pursue discovery, and admit relevant evidence at hearings regarding the legality of the delegation of authority to XEROX and XEROX's authority to issue NOVs and UTCs.

221.    As a direct and proximate result of these Local Government Defendants' violation of 42 U.S.C. § 1983, these Plaintiffs and the XEROX Class have suffered injuries and damages.

<u>**COUNT XVI**</u>
*vs.*
*GATSO Local Government Defendants*

**Violation of U.S. Constitutional Right to Procedural Due Process**

222.    Plaintiffs in Table II, who received NOVs and/or UTCs from GATSO, and the GATSO Class incorporate by reference paragraphs 1 through 97 as if fully set forth herein, and further allege:

223.    These Plaintiffs and the GATSO Class bring this claim under 42 U.S.C. § 1983, against the applicable GATSO Local Government Defendants, acting under color of law.

224.    These Plaintiffs and the GATSO Class members have a property interest in not being threatened into paying unlawfully issued fines and cannot be compelled to pay such fines without being afforded adequate process.

225.    At all times material, it was the policy, custom, and/or practice of these GATSO Local Government Defendants to contract with GATSO to outsource public, governmental functions, including the review of red-light camera photographs and video to make initial determinations (or final rejections) of possible red-light violations, the issuance of NOVs, the issuance of UTCs, and the transmission of UTCs to the applicable state court.

226.    By delegating these functions, these GATSO Local Government Defendants acted in their official capacities and purported to cloak GATSO in the authority they hold. The Wandall Act requires that local governments issue NOVs and UTCs. The authority these GATSO Local Government Defendants delegated to GATSO permitted it to issue NOVs and UTCs that, on their faces, appeared to be official exercises of the police power reposed in these Local Government Defendants.

227.    Through these actions, these GATSO Local Government Defendants denied these Plaintiffs and GATSO Class members their rights to be free from the deprivation of property without procedural due process. Specifically, Florida law confers on drivers within the State of Florida the right not to be fined for a red-light camera traffic infraction unless a TIEO or other duly licensed law enforcement officer issues the NOV and the subsequent UTC.

228.    Further, the GATSO Local Government Defendants denied these Plaintiffs and GATSO Class members their rights to procedural due process by delegating the transmission of UTCs to traffic courts to the Vendor Defendants when Florida law requires this be done by a TIEO, thus subjecting Plaintiffs and GATSO Class members to proceedings over which the traffic courts did not properly have jurisdiction.

229.    Consequently, these GATSO Local Government Defendants were acting under color of state law when they improperly delegated these functions.

230.    Given the conduct above, these GATSO Local Government Defendants' denied these Plaintiffs and GATSO Class members' procedural due process rights, including, without limitation, permitting tickets to be issued and collected pursuant to a process that was void *ab initio* (depriving Class members of their property) and also of the right to give testimony, pursue discovery, and admit relevant evidence at hearings regarding the legality of the delegation of authority to GATSO and GATSO's authority to issue NOVs and UTCs.

231.    As a direct and proximate result of these Local Government Defendants' violation of 42 U.S.C. § 1983, these Plaintiffs and the GATSO Class have suffered injuries and damages.

## COUNT XVII

*vs. The Local Government Defendants & the Defendant Class*

### Delegation of Police Powers in Violation of Florida Law

232.    All Plaintiffs and the Plaintiffs Classes incorporate by reference paragraphs 1 through 97 as if fully set forth herein, and further allege:

233.    The Florida Constitution imbues counties and municipalities, including pursuant to Article VIII, Section 2(b), with police powers to perform governmental services. The improper delegation of police powers to non-governmental entities is an invalid exercise of local government power and is unconstitutional.

234.    Traffic control is strictly and solely within the ambit of the police powers of governmental entities.

235.    Florida law prohibits the delegation of police powers to non-governmental entities, and any agreement that effectively contracts away such powers is unenforceable.

236.    The Wandall Act authorizes local governments to use cameras to capture red light violations and enforce such violations. Pursuant to the Act, a county or municipality may authorize a TIEO to enforce the violations, and issue them through electronic means.

237.    Florida's statutes do not authorize the delegation of the authority to issue citations to anyone other than a Florida law enforcement officer such as a TIEO.  § 316.640(5)(a), Fla. Stat.

238.    In contravention of Florida law, the Local Government Defendants and the Defendant Class members outsourced to private third-parties, including the Vendor Defendants, their legislatively granted authority to issue uniform traffic citations by contracting with the Vendor Defendants to perform virtually all of the functions that the Florida Legislatures

authorized only the Defendant Cities Class to perform. Specifically, the Vendor Defendants, and not a TIEO or other authorized officer, determines whether a violation has occurred, and the Vendor Defendants issue the citation. The delegation of this authority to the Vendor Defendants to determine if a violation has occurred, along with the delegation of the issuance of the citation is an improper delegation of police powers.

239.    Through this improper delegation of police powers, the Local Government Defendants and the Defendant Class members contracted away the police power to the Vendor Defendants to prepare, review, sign official signatures of City officials, issue, mail, and transmit official UTC to the respective Clerk of Court violations bureau—essentially performing the police powers of the sovereign.

240.    The Local Government Defendants and Defendant Class members improperly delegated their police powers when they contractually outsourced their statutory obligations to the for-profit, non-governmental Vendor Defendants.

241.    As a direct and proximate result of the Local Government Defendants' and the Defendant Class members' unlawful delegation of police powers in violation of Florida law, all Plaintiffs and the Plaintiffs Classes have suffered injuries and damages.

## <u>COUNT XVIII</u>
*vs.*
*The Local Government Defendants & the Defendant Class*

**Violation of Florida Law – Preemption**

242.    All Plaintiffs and the Plaintiffs Classes incorporate by reference paragraphs 1 through 97 as if fully set forth herein, and further allege:

60

243.    Under Article VIII, §2(b) of the Florida Constitution, municipalities have broad governmental powers to allow them to conduct municipal functions and perform municipal services.

244.    However, these powers are limited if said powers are expressly preempted by the State by the Constitution or general law.  *See* Fla. Stat. §§ 166.011, *et seq.*

245.    The Wandall Act authorizes local governments to use cameras to capture red light violations and enforce such violations. The Act permits a county or municipality to authorize only a traffic infraction enforcement officer to determine whether a violation has occurred, enforce the violations, and issue them through electronic means

246.    In contravention of these Florida Statutes, the Local Government Defendants and Defendant Class members outsourced to private third-parties, including the Vendor Defendants, their legislatively granted authority to issue uniform traffic citations by contracting with the Vendor Defendants to perform virtually all of the functions that the Florida Legislatures authorized only the Defendant Cities Class to perform.  Specifically, the Vendor Defendants, and not a TIEO or other authorized officer, determines whether a violation has occurred, and the Vendor Defendants issue the citation. The delegation of this authority to the Vendor Defendants to determine if a violation has occurred, along with the delegation of the issuance of the citation is an improper delegation of police powers.   This unlawful delegation of police powers is preempted by state law.

247.    As a direct and proximate result of the Vendor Defendants' violation of Florida preemption law, all Plaintiffs and the Plaintiffs Classes have suffered injuries and damages.

<u>COUNT XIX</u>
*vs.*
*The Local Government Defendants & the Defendant Class*

**Violation of the Right to Due Process Pursuant to the Florida Constitution**

248.    All Plaintiffs and the Plaintiffs Classes incorporate by reference paragraphs 1 through 97 as if fully set forth herein, and further allege:

249.    Article I, Section 9 of the Florida Constitution, provides in part that "[n]o person shall be deprived of life, liberty, or property without due process of law..."

250.    Notice is a fundamental aspect of due process.  The NOVs and UTCs sent to Plaintiffs and the Plaintiff Class members only advised them of certain rights to challenge the NOVs and UTCs, but failed to disclose critical information about the entirety of the Plaintiffs and the Plaintiff Class members' legal rights.  Specifically, the NOVs and UTCs failed to disclose that they were issued through an improper delegation of the Local Government Defendants and the Defendant Class Members' police powers to the Vendor Defendants, which rendered the NOVs and UTCs void ab initio.

251.    The Local Government Defendants charged Plaintiffs and the Plaintiff Class members fines and fees for red-light violations that resulted from the unlawful delegation of police powers to the Vendor Defendants. Such violations were void ab initio and, therefore, the Local Government Defendants deprived Plaintiffs and the Plaintiff Class members of their property without due process of law.

252.    As a direct and proximate result of the Local Government Defendants' and the Defendant Class' violation of Plaintiffs' due process rights under the Florida Constitution, all Plaintiffs and the Plaintiffs Classes have suffered injuries and damages.

## COUNT XX

*vs.*

*All Defendants*

### Declaratory Judgment and Injunctive Relief

253.    All Plaintiffs and the Plaintiff Classes incorporate by reference paragraphs 1 through 97 as if fully set forth herein, and further allege:

254.    This is a count for injunctive and declaratory relief pursuant to 28 U.S.C. §§ 2201-2202, based upon the Local Government Defendants' and the Defendant Class members' violations of Florida Statutes §§ 316.0083(1)(a), 316.650(3)(c), 316.640(5)(a), and *City of Hollywood v. Arem*.

255.    Section 28 U.S.C. 2201 provides in relevant part:

> In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

256.    28 U.S.C. § 2202 provides: "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

257.    Plaintiffs are in doubt about their rights under Florida Statutes §§ 316.0083(1)(a), 316.650(3)(c), and 316.640(5)(a) and *City of Hollywood v. Arem*.

258.    An actual case or controversy exists within the meaning of 28 U.S.C. § 2201 because the Local Government Defendants and the Defendant Class members improperly delegated their police powers when they contractually outsourced their statutory obligations to a

for-profit, non-governmental corporation. Specifically, the Local Government Defendants and the Defendant Class members:

    (a)    violated Fla. Stat. § 316.0083(1)(a) because they impermissibly delegated their statutory authority to the Vendor Defendants and allowed the Vendor Defendants to issue NOVs and UTCs;

    (b)    violated Fla. Stat. § 316.650(3)(c) because they impermissibly delegated their statutory authority to the Vendor Defendants by allowing the Vendor Defendants to unlawfully initiate a judicial proceeding when Florida law only allows a TIEO to lawfully do so;

    (c)    violated Fla. Stat. § 316.640(5)(a) because they impermissibly delegated their authority to the Vendor Defendants and allowed the Vendor Defendants to issue NOVs and UTCs because under Florida law, "*only* law enforcement officers and traffic enforcement officers have the legal authority to issue citations for traffic infractions, which means only law enforcement officers and traffic enforcement officers are entitled to determine who gets prosecuted for a red-light violation." *City of Hollywood*, 2014 WL 5149159, at *4 (emphasis added); and,

    (d)    violated Fla. Stat. §§ 316.0083(1)(b)(2)-(4) when they allowed the Vendor Defendants to receive a commission from UTC and NOVs because the aforementioned statutes forbid the receipt of a commission from any revenue collected from red-light camera violations to an entity other than state departments, counties and municipalities.

259.    Plaintiffs and the Plaintiff Classes seek a determination of their rights under Fla. Stat. §§ 316.0083(1)(a), 316.650(3)(c), and 316.640(5)(a) and *City of Hollywood v. Arem*, as it relates to the Local Government Defendants and the Defendant Class members' improperly delegating their police powers by contractually outsourcing their statutory obligations to for-profit, non-governmental corporations.

260.    Specifically, Plaintiffs and the Plaintiff Classes seek a declaratory decree finding that Local Government Defendants and the Defendant Class members:

(a)   violated Fla. Stat. § 316.0083(1)(a) because they impermissibly delegated their statutory authority to the Vendor Defendants and allowed the Vendor Defendants to issue NOVs and UTCs;

(b)   violated Fla. Stat. § 316.650(3)(c) because they impermissibly delegated their statutory authority to the Vendor Defendants by allowing the Vendor Defendants to unlawfully initiate a judicial proceeding when Florida law only allows a TIEO to lawfully do so;

(c)   violated Fla. Stat. § 316.640(5)(a) because they impermissibly delegated their authority to the Vendor Defendants and allowed the Vendor Defendants to issue NOVs and UTCs because under Florida law, "*only* law enforcement officers and traffic enforcement officers have the legal authority to issue citations for traffic infractions, which means only law enforcement officers and traffic enforcement officers are entitled to determine who gets prosecuted for a red-light violation." *City of Hollywood*, 2014 WL 5149159, *4 (emphasis added); and,

(d)   violated Fla. Stat. §§ 316.0083(1)(b)2–4, when they allowed Vendor Defendants to receive a commission from UTC and NOVs because the aforementioned statutes forbids the receipt of a commission from any revenue collected from red-light camera violations to an entity other than state departments, counties and municipalities.

261.   Plaintiffs and the Plaintiff Classes also seek a declaratory decree finding that any future violations of Fla. Stat. §§ 316.0083(1)(a), 316.650(3)(c), 316.640(5)(a), 316.0083(1)(b)(2)-(4) would be illegal and prohibited under *City of Hollywood v. Arem*.

262.   The aforementioned case or controversy is justiciable and actual and concerns an important issue that should, in the public interest be resolved, namely: the illegal statutory delegation of authority by Local Government Defendants and the Defendant Class members to Vendor Defendants that also resulted in and will result in the wrongful collection of NOV and UTC fines from Plaintiffs and the Plaintiff Class members.

263.   As a direct and proximate cause of the Local Government Defendants and the Defendant Class members' acts and omissions, Plaintiffs and the Plaintiff Classes have suffered

actual injuries, including being subjected to the threat of unlawful fines and the unlawful monetary fines and associated fees themselves.

264. Plaintiffs and the Plaintiff Class members face a further threatened injury: the continued issuance of NOVs and UTCs if the Local Government Defendants and the Defendant Class members continue the illegal delegation of authority which, to date, has not ceased.

265. The Local Government Defendants and Defendant Class members' acts and omissions as set forth herein, have caused injury and will continue to cause injury if their acts do not cease.

266. The requested relief would provide a remedy and redress for Plaintiffs and Plaintiff Class members' injuries.

267. The issues in this count are ripe for judicial review because there is a genuine need to redress Plaintiffs and Plaintiff Class members' injuries and threatened injuries.

268. The existence of another adequate remedy does not preclude a judgment for declaratory relief.

269. Plaintiffs and the class are entitled to actual damages.  As a result of the Local Government Defendants and the Defendant Class members' conduct in this matter, Plaintiffs were required to retain, and will be required to pay, for the services of undersigned counsel and their firms.

270. As a direct and proximate cause of Local Government Defendants and the Defendant Class members' acts and omissions, Plaintiff and the Plaintiff Class members have incurred liquidated economic damages in the form of the illegally assessed fines resulting from the illegal NOVs and UTCs, plus interest.

271.    Pursuant to 28 U.S.C. § 2202 upon prevailing in this declaratory decree, Plaintiffs are entitled to further necessary or proper relief in the form of an award to Plaintiffs' Classes of any monies paid pursuant to the unlawful conduct set forth herein, all damages recoverable under applicable law, pre- and post-judgment interest, attorneys' fees and allowable costs.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, hereby demand:

a)  certification of the proposed Plaintiffs' and Defendant Classes;

b)  appointment of the Plaintiffs as representatives of the Plaintiffs' Classes;

c)  appointment of the City of Miami as the representative of the Defendant Class;

d)  appointment of the undersigned counsel as counsel for the Plaintiffs' Classes;

e)  a declaration that Defendants and the Defendant Class members' actions, described above, violate § 1983, FDUPTA, the Wandall Act, the Florida Constitution and laws, and constitute unjust enrichment;

f)  an order enjoining Defendants and the Defendant Class members, as provided by law, from engaging any further in the unlawful conduct set forth herein;

g)  an award to Plaintiffs' Classes of any monies paid pursuant to the unlawful conduct set forth herein, all damages recoverable under applicable law, pre- and post-judgment interest, attorneys' fees and allowable costs pursuant to Fla. Stat. § 501.2105, 42 U.S.C. § 1988, and other applicable law;

h)  an order requiring ATS, XEROX, GATSO and/or the Local Government Defendants and Defendant Class members to relieve any Plaintiffs' Class members of the obligation to pay any outstanding fines demanded based on the unlawful conduct set forth herein; and

i)  such other relief as this Court deems just and equitable.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a trial by jury on all applicable claims.

Dated:  February 20, 2015.

Respectfully submitted,

  s/ Theodore J. Leopold
Theodore J. Leopold
Florida Bar No. 705608
COHEN MILSTEIN SELLERS
& TOLL PLLC
2925 PGA Boulevard
Suite 200
Palm Beach Gardens, FL 33410
Tel.:561-515-1400
Fax:561-515-1401
tleopold@cohenmilstein.com

  s/ Ervin A. Gonzalez
Ervin A. Gonzalez
Florida Bar No. 500720
Patrick Montoya
Florida Bar No. 524441
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Tel.: 305-467-7400
ervin@colson.com

Andrew N. Friedman (*Pro Hac Vice*)
DC Bar No. 375595
Matthew Axelrod (*Pro Hac Vice*)
DC Bar No. 1014503
Sally Handmaker (*Pro Hac Vice*)
DC Bar No. 1005414
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Avenue, NW
Suite 500 East
Washington, DC 20005
Tel.:202-408-4600
afriedman@cohenmilstein.com
shandmaker@cohenmilstein.com
Manuel L. Dobrinsky
Florida Bar No. 775525

  s/ Stephen F. Rosenthal
Stephen F. Rosenthal
Florida Bar No. 0131458
Ramon A. Rasco
Florida Bar No. 0617334
PODHURST ORSECK, P.A.
City National Bank Bldg., Suite 800
25 West Flagler Street
Miami, FL 33130
Tel.: 305-358-2800   Fax: 305-358-2382
rrasco@podhurst.com
srosenthal@podhurst.com

Marc A. Wites
Florida Bar No. 24783
WITES & KAPETAN, P.A.
4400 N. Federal Highway
Lighthouse Point, FL 33064
Tel.: 954-570-8989   Fax: 954-354-0205
mwites@wklawyers.com

Douglas F. Eaton
Florida Bar No. 129577
EATON & WOLK, P.L.
One Biscayne Tower, Suite 3100
2 South Biscayne Boulevard
Miami, Florida 33131
Tel.:  305-249-1640
Fax:  786-221-1759
deaton@eatonwolk.com

Andrew T. Trailor
ANDREW T. TRAILOR, P.A.
8603 S. Dixie Highway
Suite 303
Miami, Florida 33143
Tel.: 305-668-6090
Fax: 305-668-6225
andrewtrailor@attlawpa.com

Jonathan E. Freidin
Florida Bar No. 98955
FREIDIN DOBRINSKY BROWN AND
ROSENBLUM, P.A.
One Biscayne Tower, Suite 3100
2 South Biscayne Boulevard
Miami, Florida 33131
Tel.:  305-371-3666
jfreidin@fdlaw.net
mdobrinsky@fdlaw.net

Rafael E. Millares
Florida Bar No. 504998
ESTRELLA TICKET DEFENSE
LAW FIRM, P.A.
3750 W. Flagler Street, 2nd Floor
Miami, FL 33134
Tel.: 305-503-4124  Fax: 305-443-9132
rmillares@estrellaticketdefense.com

Irwin B. Levin
Richard E. Shevitz
Lynn A. Toops
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.:  317-636-6481
Fax:  317-636-2495
ilevin@cohenandmalad.com
rshevitz@cohenandmalad.com
ltoops@cohenandmalad.com

David M. Kerner
Florida Bar No. 84388
Jason D. Weisser
Florida Bar No. 101435
SCHULER, HALVORSON,WEISSER,
ZOELLER & OVERBECK, P.A.
Barristers Building
1615 Forum Place, Suite 4D
West Palm Beach, FL 33401
Tel.: 561- 689-8180
Fax: 561- 684-9683
dkerner@shw-law.com
jweisser@shw-law.com

Keith A. Goldbaum
Florida Bar No. 475637
FRIEDMAN, ROSEN WASSER &
GOLDBAUM, P.A.
5355 Town Center Road
The Plaza, Suite 801
Boca Raton, FL 33486
Tel.: 561-395-5511  Fax: 561-368-9274
goldboca@aol.com

Gary M. Farmer, Jr.
Florida Bar No. 914444
Stephen R. Jaffe
Florida Bar No. 390770
Mark S. Fistos
Florida Bar No. 909191
FARMER, JAFFE, WEISSING, EDWARDS,
FISTOS & LEHRMAN, P.L.
425 N. Andrews Ave., Suite 2
Fort Lauderdale, FL 33301
Tel.: 954-524-2820   Fax:  954-524-2822
gary@pathtojustice.com
steve@pathtojustice.com

Ted L. Hollander
Florida Bar No. 116106
THE TICKET CLINIC - A Law Firm
1580 South Federal Highway
Fort Lauderdale, FL 33316
Tel.: 954-522-5926
Fax: 954-522-5197
tedhollander@theticketclinic.com

*Co-Counsel for Plaintiffs in the merged actions*

69