UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
No. 14-CIV-24010-MORENO

CHRISTOPHER L. PARKER et al.,

    *Plaintiffs*,

vs.

MARSHALL STRANBURG, in his Official
Capacity as the Executive Director of the
Florida Department of Revenue, and the
FLORIDA DEPARTMENT OF REVENUE,

    *Defendants*.

_____/

## ORDER GRANTING MARSHALL STRANBURG AND THE FLORIDA DEPARTMENT OF REVENUE'S MOTION TO DISMISS

The Plaintiffs in this case are drivers who received unlawfully issued citations for red light traffic violations. The bulk of the Plaintiffs' complaint pertains to the municipalities and private vendors that contracted to review and issue citations in violation of Florida law. The Plaintiffs also sued the Florida Department of Revenue and its executive director, Marshall Stranburg, for unjust enrichment and declaratory relief as the statutory recipients of a portion of the unlawfully issued fines. The Court now considers the Department of Revenue's motion to dismiss the Plaintiffs' claims.[1] Because the Plaintiffs cannot establish that their injuries are traceable to the Department of Revenue's conduct, the Court grants the Department of Revenue's motion to dismiss for lack of jurisdiction.

---

[1] The Florida Department of Revenue and Marshall Stranburg consented to suit in federal court. D.E. 326.

1

I.  **Background**

In 2010, the Florida legislature passed the Mark Wandall Traffic Safety Act, Fla. Stat. § 316.0083, which authorizes local governments to use red light cameras to detect traffic violations and issue citations. The Traffic Safety Act enumerates the procedures that municipalities must afford drivers to review and challenge the citations, and sets a $158 fine for each violation. From each $158 fine, the Traffic Safety Act directs $83 to the Department of Revenue for disbursement into: Florida's General Revenue Fund ($70); the Department of Health Emergency Medical Services Trust Fund ($10); and the Brain and Spinal Cord Injury Trust Fund ($3). The municipality keeps the remaining $75 from each fine. Fla. Stat. § 316.0083(1)(b)(3).

Municipalities across the state contracted with private vendors, including American Traffic Solutions, Xerox, and Gatso, to put the Traffic Safety Act into effect. The vendors provided the municipalities with cameras to detect violations and standardized computer programs to review and issue citations. Citations were generally issued as follows: when a red light camera was triggered, an employee from one of the private vendors reviewed the image and video from the camera to decide whether the driver committed an infraction. If the employee believed an infraction occurred, then the employee transmitted the photographs and videos of the infraction to a municipal traffic infraction enforcement officer, who then "accepted" or "rejected" the vendor's recommendation. If the municipal officer "accepted" the recommendation, then the vendor automatically issued a citation with a $158 fine to the offending driver.

The Fourth Circuit held that this type of vendor-municipality arrangement to enforce red light violations constituted an unlawful delegation of police power in *City of Hollywood v. Arem*, 154 So. 3d 359, 361 (Fla. Dist. Ct. App. 2014). The City of Hollywood's red light program ran afoul of the plain language of the Traffic Safety Act by "outsourcing to a third-party for-profit

vendor [] a city's statutorily mandated obligation to issue uniform traffic citations for red light camera violations . . . ." *Id.* at 361. The Court held that the driver's citation—screened and issued by a private vendor—was void *ab initio*, and ruled that the proper remedy was dismissal of the citation. *Id.* at 361, 365. The Florida Supreme Court denied a petition to review the decision on April 13, 2015. *City of Hollywood v. Arem*, No. SC15-236, 2015 WL 1787409 (Fla. Apr. 13, 2015).

Shortly after the *Arem* decision, several classes of ticketed drivers filed suit in state and federal courts to challenge similar red light programs across the state. The cases were transferred to the Court's docket, and the Court consolidated the cases on January 23, 2015. The Plaintiffs filed a master complaint on February 20, 2015, in which they accuse the Department of Revenue of unjustly accepting and retaining a portion of the revenue generated by municipal red light programs. The Plaintiffs do not allege that the Department of Revenue played a role in reviewing red light infractions or issuing citations.

## II.   Standing

In order to meet the jurisdictional requirements of Article III, the Plaintiffs bear the burden of establishing an injury in fact, causation, and redressibility. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). At the motion to dismiss phase, the Plaintiffs can satisfy their burden by pleading general allegations about the State's conduct that would entitle them to stand before the Court. *Id.* at 561.

The Plaintiffs plainly satisfy the injury in fact and redressibility elements of the Court's standing inquiry: the Plaintiffs suffered financial injury when they paid fines for unlawfully issued traffic citations, and the Plaintiffs will find redress if the Court orders the Defendants to repay those fines. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1323–24 (11th Cir. 2012). The

Plaintiffs believe that their pleadings satisfy the causative element of the Court's inquiry because the Department of Revenue accepted and distributed the portion of each traffic fine that was directed to the Department of Revenue by statute.

The Plaintiffs are not required to establish a substantive causal link between the Department of Revenue's conduct and their injuries, *Focus on the Family v. Pinellas Suncoast Transit Authority*, 344 F.3d 1263, 1273 (11th Cir. 2003), but the Plaintiffs must show that their injuries are "fairly traceable to the challenged action" of the Department of Revenue. *Lujan*, 504 U.S. at 560. Tracing their injuries to the source, the Plaintiffs' injuries were wholly caused by the municipalities and the vendors with which they contracted. The Plaintiffs received traffic fines from municipal governments working in conjunction with private vendors, and those fines were void because, according to the *Arem* court, they were issued in contravention of the Traffic Safety Act. The Plaintiffs were injured when they paid $158 to satisfy those unlawful fines. Where the Plaintiffs' money flowed next—first to the Department of Revenue, and then to beneficiaries throughout the state—had no effect on the existence, magnitude, or frequency of the Plaintiffs' injuries. *See Huddy v. F.C.C.*, 236 F.3d 720, 722 (D.C. Cir. 2001). The Department of Revenue's monetary gain is among the many results, rather than the causes, of the Plaintiffs' injuries.

In any event, the Department of Revenue is connected to the Plaintiffs only by operation of the Traffic Safety Act, which mandates the Department of Revenue's receipt and distribution of funds from each citation. *See* Fla. Stat. § 316.0083(1)(b)(3). The Department of Revenue simply accepted the sums that it was legally entitled (and legally required) to retain and disburse throughout the state. *State Farm Fire & Casualty Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 584 (11th Cir. 2013). Since the Plaintiffs have not challenged the revenue allocation

provision of the Traffic Safety Act, the Court will not fault the Department of Revenue for complying with the directives of the Florida legislature.

### III.  Conclusion

The Plaintiffs' injuries are not traceable to the Department of Revenue's statutorily mandated conduct. Accordingly, the Plaintiffs claims against the Department of Revenue are DISMISSED for lack of jurisdiction. As the Plaintiffs do not have standing to file suit against the State in federal court, the Court cannot reach the merits of their unjust enrichment claims. *See AT&T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 494 F.3d 1356, 1359 (11th Cir. 2007).

DONE and ORDERED in Chambers at Miami, Florida, this ___ day of June, 2015.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record