UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
No. 14-CIV-24010-MORENO

CHRISTOPHER L. PARKER et al.,

    *Plaintiffs*,

vs.

AMERICAN TRAFFIC SOLUTIONS, INC.,
et al.

    *Defendants*.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART VENDOR AND LOCAL GOVERNMENT DEFENDANTS' MOTIONS TO DISMISS

This action was brought by drivers who received tickets for red light violations that were detected by cameras and reviewed by private vendors. The Defendants in this case are the private vendors and the local governments that contracted to set up mechanisms to detect, review, and issue citations for red light violations.[1] The Court now considers the Vendors and Local Governments' motions to dismiss the Plaintiffs' claims against them.

### I. BACKGROUND

In 2010, the Florida legislature passed the Mark Wandall Traffic Safety Act, Fla. Stat. § 316.0083, which authorizes local governments to use red light cameras to detect traffic violations and issue citations. The Traffic Safety Act establishes the procedures that local governments must afford drivers to review and challenge the citations and sets a $158 fine for each violation.

Local governments across the state contracted with American Traffic Solutions, Xerox,

---

[1] On June 22, 2015, the Court dismissed the Florida Department of Revenue from this case for lack of jurisdiction. *Parker v. Florida Department of Revenue*, No. 14-CIV-24010 (S.D. Fla. June 22, 2015).

1

and Gatso to put the Traffic Safety Act into effect. These private vendors provided the localities with red light cameras to detect violations and standardized computer programs to review and issue citations, and in return, the Vendors received monthly maintenance and service fees.

Citations were generally issued as follows: when a red light camera was triggered, an employee from one of the private Vendors reviewed the image and video from the camera to decide whether the driver committed an infraction. If the employee believed an infraction occurred, then the employee transmitted the photographs and videos of the infraction to a municipal traffic infraction enforcement officer, who then "accepted" or "rejected" the vendor's recommendation. If the officer "accepted" the recommendation, then the vendor automatically issued a citation with a $158 fine to the offending driver.

Until July 1, 2013, drivers who received a red light ticket could either pay the $158 fine, submit an affidavit affirming that the driver was exempted from the statute when the ticket was issued, or wait until the ticket converted into a uniform traffic citation, at which time the driver could challenge the citation at a hearing. Fla. Stat. § 316.0083 (2012). Drivers who elected to challenge their citation by hearing ran the risk of a civil penalty up to $500 if the citation was upheld. *See* Fla. Stat. § 318.14. In 2013, the Florida legislature amended the Traffic Safety Act to provide drivers with the opportunity to challenge red light tickets before a city hearing officer within sixty days of the issuance of a ticket.

Florida's Fourth District Court of Appeals examined whether these types of red light ticketing programs complied with the Traffic Safety Act in *City of Hollywood v. Arem*, 154 So. 3d 359, 361 (Fla. Dist. Ct. App. 2014). The *Arem* court held that the City of Hollywood's red light program violated the plain language of the Traffic Safety Act by "outsourcing to a third-party for-profit vendor of a city's statutorily mandated obligation to issue uniform traffic

citations for red light camera violations . . . ." *Id.* at 361. The Court did not consider whether the driver actually deserved a red light ticket, but held that the ticket—screened and issued by a private vendor—was void *ab initio*, and ruled that the proper remedy was dismissal of the ticket. *Id.* at 361, 365. The Florida Supreme Court denied a petition to review the *Arem* decision on April 13, 2015. *City of Hollywood v. Arem*, No. SC15-236, 2015 WL 1787409 (Fla. Apr. 13, 2015).

Shortly after the *Arem* decision, several classes of ticketed drivers filed suit in state and federal courts to challenge similar red light programs across the state. The cases were transferred to the Court's docket, and the Court consolidated the cases on January 23, 2015. The Plaintiffs filed a master complaint on February 20, 2015, in which the Plaintiffs bring claims for: 1) violation of the Florida Deceptive and Unfair Trade Practices Act against the Vendors; 2) unjust enrichment against all Defendants; 3) violation of the Due Process Clause against all Defendants; and 4) violation of Florida law against the Local Governments. The Plaintiffs also seek declaratory and injunctive relief. The Defendants moved to dismiss, and the Court now considers whether the Plaintiffs pled "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## II. PRELIMINARY BARRIERS TO SUIT

### A. Standing

In order demonstrate Article III standing, the Plaintiffs bear the burden of establishing an injury in fact, causation, and redressibility. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). At the motion to dismiss phase, the Plaintiffs can satisfy their burden by pleading

general allegations about the Defendants' conduct that would entitle them to stand before the Court. *Id.* at 561.

The Plaintiffs have demonstrated standing to sue the Vendors and Local Governments. The Plaintiffs allege that they suffered financial injury when they paid fines to satisfy traffic citations issued by the Vendors on behalf of the Local Governments. The Defendants collectively developed a program to issue and collect fines in violation of Florida law, which caused those fines to be void *ab initio*. Of course, the Plaintiffs will find redress if the Court orders the Defendants to repay those fines. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1323–24 (11th Cir. 2012).

The Defendants argue that the Plaintiffs did not suffer injuries in fact because the Plaintiffs do not contest the merits of the underlying red light citations, and, assuming that the Plaintiffs did run red lights, the Plaintiffs do not have a legally protected interest in the right to violate traffic laws. While the Court finds considerable merit in the Defendants' argument, the *Arem* decision controls the Court's injury in fact analysis. The Court reads *Arem* to pronounce that drivers are injured upon the receipt of an unlawfully issued red light citation, irrespective of whether the driver actually deserved the citation for running a red light. *See Arem*, 154 So. 3d at 365. The Plaintiffs have pled as much in their complaint.

**B.     Voluntary Payment**

The Defendants argue that the Plaintiffs' claims are barred by the voluntary payment doctrine because the Plaintiffs chose to pay their red light tickets instead of challenging the fines. Under the voluntary payment doctrine, a plaintiff who voluntarily pays money in reply to an incorrect or illegal claim of right cannot recover that payment unless he can show fraud, coercion, or mistake of fact. *City of Miami v. Keton*, 115 So. 2d 547, 551 (Fla. 1959). The

voluntary payment doctrine, however, is an affirmative defense, and the Court ordinarily does not require litigants to plead around affirmative defenses. *Jackson v. U.S. Bank, N.A.*, No. 14-21252-CIV, 2014 WL 4179867 (S.D. Fla. Aug. 22, 2014). The Court will consider the voluntary payment doctrine defense at the summary judgment stage.

### III. SUBSTANTIVE CLAIMS

#### A. Florida Deceptive and Unfair Trade Practices Act Claims Against Vendors

The Florida Deceptive and Unfair Trade Practices Act (FDUTPA) prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). To state a claim for a FDUTPA violation, the Plaintiffs must allege a deceptive or unfair practice in the course of trade or commerce, causation, and actual damages. *See Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). The Vendors move to dismiss the Plaintiffs' FDUTPA claims on the grounds that first, the red light tickets were not issued "in the course of trade or commerce," and second, the Plaintiffs are not entitled to recovery because ticketed drivers are not considered "consumers" under the Act.

FDUPTA defines "trade or commerce" as "advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. § 501.203. The Court is directed to liberally construe FDUTPA's provisions to afford protection where possible. *See* Fla. Stat. § 501.202. On the pleadings, the Court is persuaded that the Vendors offered services to the Plaintiffs.

The Vendors and Local Governments created a marketplace for drivers who believed they owed money to satisfy unlawful fines. Within that marketplace, the Vendors offered their services to allow drivers to make payments towards those fines. Some drivers paid a

5

convenience fee to use these services, but the Vendors' real profit came from ensuring that the Vendors' services were used to fund the Local Governments. The Court finds these allegations sufficient to bring the Vendors' activity into the realm of trade or commerce.

Moving to the Vendors' consumer defense, FDUTPA's individual remedies provision states that "[i]n any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages . . . ." Fla. Stat. § 501.211(2). The Vendors ask the Court to adopt a conservative reading of the statute, under which only "consumers" can bring claims for FDUTPA violations. By this interpretation, only Plaintiffs who paid a convenience fee to use the Vendors' payment system would be entitled to relief. *E.g.*, *Leon v. Tapas & Tintos, Inc.*, 51 F. Supp. 3d 1290, 1297 (S.D. Fla. 2014).

The Florida Fourth District Court of Appeals satisfied the Court's need for guidance in *Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach County, Inc.*, where the court held that a person does not have to be a "consumer" to bring a FDUTPA claim. No. 4D13-3916, 2015 WL 3480114, at *5 (Fla. Dist. Ct. App. June 3, 2015).[2] In keeping with the terms of the statute, "the [Florida] legislature no longer intended FDUTPA to apply to only consumers, but to other entities able to prove the remaining elements of the claim as well." *Id.* at *4. Here, the Plaintiffs allege that the Vendors offered a service that enabled them to pay unlawful fines, and that the Vendors offered this service in a deceptive manner. While some Plaintiffs did not pay to use the Vendors' service, all Plaintiffs were injured when they used this service to pay a $158 fine that they did not owe. These pleadings satisfy the remaining elements of a FDUTPA claim.

---

[2] The Fourth District Court of Appeal diplomatically referred to the Southern District of Florida's indecision as "outwardly mixed." *See* 2015 WL 3480114, at *3 (Fla. Dist. Ct. App. June 3, 2015) (listing cases).

6

### B.     Unjust Enrichment Claims Against All Defendants

To state a claim for unjust enrichment, the Plaintiffs must allege that they conferred a benefit upon the Defendants, that the Defendants appreciated that benefit, and that the Defendants accepted and retained that benefit under circumstances that make it inequitable for them to retain it. *See Ruck Brothers Brick v. Kellogg & Kimsey, Inc.*, 668 So. 2d 205, 207 (Fla. Dist. Ct. App. 1995). In their motion to dismiss, the Vendors argue: first, that the Defendants did not benefit from the Plaintiffs' payments because those payments, while made to the Vendors, were passed on to the local governments and distributed throughout the state as directed by Fla. Stat. § 316.0083(1)(b)(3); and second, that the Plaintiffs cannot establish that the Defendants' enrichment was "unjust" because the Plaintiffs do not dispute the merits of the underlying traffic violations. Alternatively, the Defendants argue that the Plaintiffs' unjust enrichment claim should be dismissed as duplicative of their FDUTPA claim.

For the purpose of the instant motion, the Court concludes that the Plaintiffs adequately pled claims for unjust enrichment against the Vendors and the Local Governments. The enrichment and the equitable components of the Plaintiffs' claim are deeply intertwined: the Vendors were enriched both by the Plaintiffs who paid a convenience fee to satisfy their fines and by the Local Governments that contracted with the Vendors to implement and administer red light ticketing programs. The Local Governments profited directly from the funds paid through the Vendors, and these funds were unjustly realized because, regardless of the merits of the underlying traffic violations, the fines were paid to satisfy tickets that were void *ab initio*. The Plaintiffs' decision to plead unjust enrichment in the alternative to its other claims does not preclude them from proceeding on their unjust enrichment claim through the motions to dismiss

phase. *See Circeo-Loudon v. Green Tree Servicing, LLC*, No. 14-C1V-21384, 2015 WL 1914798, at *5 (S.D. Fla. Apr. 27, 2015).

The Local Governments believe that, whether the Plaintiffs pled unjust enrichment, they are entitled to sovereign immunity because unjust enrichment is a quasi-contract claim, and the Florida legislature has only waived immunity for certain tort claims. *See* Fla. Stat. § 768.28. This Court held as much in *Brandt v. Public Health Trust of Miami-Date County*, No. 10-civ-22367, 2010 WL 4062798, at *1 (S.D. Fla. Oct. 15, 2010), where the Court dismissed a Fair Labor Standards Act claim on sovereign immunity grounds.

The Court, however, is bound by Florida precedent, and the Court is persuaded that under Florida law, state actors are not immune from suit for unlawful monetary extractions. Unjust enrichment is not a tort in the traditional sense, but it is a tool created by courts to provide a remedy for parties that have been unfairly deprived of their property. *E.g., Commerce Partnership 8098 Ltd. Partnership v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. Dist. Ct. App. 1997). The Plaintiffs here have a particularly strong argument that their quasi-contractual claim moves into the realm of an illegal extraction—a particularly unjust form of property deprivation—because the Plaintiffs' deprivation was caused by the unlawful acts of the Local Governments. In *Bill Stroop Roofing, Inc. v. Metropolitan Dade County*, Florida's Third District Court of Appeal held that the defendant county could not invoke sovereign immunity to retain money it obtained from charging a registration fee that was prohibited by state statute. 788 So. 2d 365, 367 (Fla. Dist. Ct. App. 2001). In its reasoning, the court noted a sovereign cannot "improperly demand and extract monies from its citizens, then, when caught with its hand in the citizen's pocket, simply decline to return the funds." *Id.* at 366.

This type of unlawful extraction lies at the heart of the Plaintiffs' unjust enrichment claim: the Plaintiffs allege that "a county's refusal to obey a direct legislative mandate" resulted in the payment of an illegal fee. *Id.* at 367. Ultimately, the Plaintiffs suffered a loss of property caused by the wrongful acts of the Local Governments, Fla. Stat. § 768.28(1), and the Defendants are not entitled to immunity from suit on these grounds.

### C. Procedural Due Process Claims Against All Defendants

The Due Process Clause requires that persons deprived of property must be afforded adequate notice and an opportunity to be heard. *See First Assembly of God of Naples, Florida, Inc. v. Collier County*, 20 F.3d 419, 422 (11th Cir. 1994). The specific process that must be afforded depends on the facts and circumstances of each case, and the required process correlates to the severity of the property interest that was deprived. *See Bell v. Burson*, 402 U.S. 535, 540 (1971). The Plaintiffs begin their procedural due process claim with a substantive critique of the Local Defendant's delegation of police power to the Defendant Vendors. *See, e.g.*, D.E. 71 ¶¶ 205–06, 208. This practice—which rendered the tickets void *ab initio*—was declared unlawful in *Arem*, and the Plaintiffs' prayer for substantive relief may be realized in their other claims. The crux of the Plaintiffs' procedural claim is that the Traffic Safety Act provided drivers with constitutionally inadequate avenues to challenge the unlawful delegation of police power. In particular, the Plaintiffs allege that they were deprived of the opportunity to be heard: drivers were not afforded the opportunity to give testimony, pursue discovery, or admit evidence at a hearing to contest the legality of the red light ticketing schemes or the merits of the charges against them. *E.g.*, *id.* at ¶ 210.

The Plaintiffs who were ticketed prior to the 2013 amendments to the Traffic Safety Act have the strongest due process claim because they could only secure a hearing if they doubled

9

down on their liability and accepted the risk of up to $500 in fines if their challenge was unsuccessful. *See* Fla. Stat. § 318.14. To evaluate whether the Traffic Safety Act afforded these Plaintiffs sufficient opportunity to be heard, the Court must consider: 1) the private interest involved; 2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value of additional procedural safeguards; 3) and the burden that those procedures would impose on the government. *See Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 903, 47 L. Ed. 2d 18 (1976).

The Plaintiffs' interest—$158—is marginal, and the Local Governments would be "greatly burdened" if they were required to conduct a formal hearing every time a ticketed diver sought to contest his or her ticket. *See Snider International Corp. v. Town of Forest Heights*, 739 F.3d 140, 149 (4th Cir.), *cert. denied*, 134 S. Ct. 2667, 189 L. Ed. 2d 210 (2014). Further, the Plaintiffs have not alleged that additional procedures would reduce the risk of unwarranted traffic citations because the Plaintiffs do not allege that any red light tickets were issued in error, or that the Plaintiffs might have been able to prove that those tickets were issued in error with the aid of formal proceedings.[3] Accordingly, the Plaintiffs' procedural due process claims are dismissed.

---

[3] Unlike the rest of the Plaintiffs' claims, the Court considers only the contest procedures set forth in the Traffic Safety Act in its analysis of the Plaintiffs' procedural due process claims. Those procedures are wholly independent from the ticketing arrangements between the Vendor and Local Governments that rendered the Plaintiffs' red light tickets void *ab initio*. (Paradoxically, those tickets are only void *ab initio* because they violate the Traffic Safety Act; finding the Traffic Safety Act unconstitutional would inject the merits of the underlying traffic violations into the Plaintiffs' substantive claims.) As such, the Court must consider whether the opportunity for a formal hearing—a contest procedure not afforded by the Traffic Safety Act— would affect driver's chances of challenging a lawfully issued red light ticket by rebutting the photographic evidence that, pursuant to Fla. Stat. § 316.0083(1)(b)(1)(b), creates a presumption of guilt against the driver. The Plaintiffs make no allegations to this end.

### D. Violations of Florida Law and Claims for Declaratory and Injunctive Relief: Delegation of Police Powers, Preemption, and Due Process

The Plaintiffs allege that they received red light tickets from local programs that mirror the ticketing program considered in *Arem*. The Local Governments may present facts that distinguish their programs from the City of Hollywood program at later stages of these proceedings, but accepting the Plaintiffs' allegations as true, *Arem* indicates that these programs violate Florida law by delegating police power to private vendors. *See Arem*, 154 So. 3d at 365. If proven, *Arem* indicates that the proper remedy for these claims is dismissal of the citation. *Id.*

Similarly, the Plaintiffs seek a declaration that *Arem* applies to red light programs that continue issuing tickets in violation of Florida law. The Court will allow the Plaintiffs' to proceed with their requests for declaratory and injunctive relief while acknowledging that if the Defendants' ticketing programs mirror that of the City of Hollywood, then the Plaintiffs have the declaration they need in *Arem*.

The *Arem* court did not, however, reach the merits of a Florida constitutional challenge to the City of Hollywood's program. The Plaintiffs complain that they were deprived of procedural due process under the Florida constitution because the red light tickets "failed to disclose that they were issued through an improper delegation of the Local Government Defendants and the Defendant Class Members' police powers to the Vendors, which rendered the [tickets] void ab initio." D.E. 71 ¶ 250. For the purpose of the Plaintiffs' Florida due process claim, the Court considers only the actual notice provided to drivers. Like the Plaintiffs' federal claim, the ticketing arrangements that violated Florida law relate only to the Plaintiffs' substantive claims. The Defendants' red light tickets informed drivers of the charges against them and of the avenues available to challenge their tickets. Presuming that drivers are aware of the relevant statutory provisions affecting their rights, see *Breath v. Cronvich*, 729 F.2d 1007, 1011 (5th Cir.

11

1984), the Plaintiffs fail to allege that they were not given sufficient notice to satisfy Florida's due process clause. Thus, the Local Governments' motions to dismiss the Plaintiffs' Florida due process claims are granted.

### IV. CONCLUSION

For the foregoing reasons, it is adjudged that the Vendors' motion to dismiss is granted in part and denied in part. The Vendors' motion to dismiss the Plaintiffs' Florida Deceptive and Unfair Trade Practices Act is denied as to the Plaintiffs that paid a fee to use the Vendors' services. The Vendors' motion to dismiss the Plaintiffs' unjust enrichment and procedural due process claims is denied.

The Local Governments' motions to dismiss are granted in part and denied in part. The Local Governments' motions to dismiss the Plaintiffs' unjust enrichment claims are denied. The Local Governments' motions to dismiss the Plaintiffs' federal and state procedural due process claims are granted. The Local Governments' motions to dismiss the Plaintiffs' unlawful delegation claims are denied. The Defendants' motions to dismiss the Plaintiffs' claims for declaratory and injunctive relief are denied.

DONE AND ORDERED in Chambers at Miami, Florida, this 10th day of August, 2015.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of Record